### EPHRAIM D. WHITCOMB'S CASE.

Suffolk.   March 23. — 30, 1876.   DEVENS & LORD, JJ., absent.

The common council of a city has no power to commit and punish for contempt; and so much of the St. of 1863, c. 158, § 2, as undertakes to confer such authority is unconstitutional and void.

HABEAS CORPUS, issued March 13, 1876, upon the petition of Ephraim D. Whitcomb, representing that he was unlawfully imprisoned and restrained of his liberty in the common jail in Boston, by John M. Clark, sheriff of the county of Suffolk; that the pretence of said imprisonment and restraint was a warrant or order purporting to have been issued by the common council of the city of Boston, a copy of which was annexed to the petition ; that the warrant or order had been issued improvidently and in violation of law.   The order of the common council, signed by the president thereof, was as follows :

" Whereas Ephraim D. Whitcomb, having been duly summoned to testify before a special committee of the common council, appointed with full powers to investigate and report upon any and all charges against members of the common council preferred in connection with action and votes, or either, in the original location or relocation of the public vegetable market by the city council, and also to inquire and report whether any money or other valuable consideration was paid, given or received, and if so, by whom, for services, votes or influence, or otherwise, in the matter of said location or relocation, unlawfully and unreasonably refused to answer a certain question lawfully propounded by the said committee, to wit, the question, ' Who was that person ? ' and did state in connection with said refusal that he did not refuse because the answer would criminate him, but did refuse for business reasons ; and having been duly arraigned at the bar of the common council and heard the report of said committee setting forth said refusal, and by the order of the council inquired of whether he had any excuse to offer for refusing to answer said question propounded by said committee, and whether he was ready to appear before said committee and answer said question, in contempt of the authority of the common council did give unsatisfactory answers to the questions propounded, and

did and does unlawfully persist in his refusal to appear before said committee and answer said question propounded by said committee : it is therefore

" Ordered, that the said Ephraim D. Whitcomb be committed to the custody of the city messenger, to be by him confined in the common jail of the county of Suffolk, for the term of twelve days, unless he shall sooner signify his willingness to appear and purge himself of his contempt, and answer the question propounded by the said special committee of the common council, which he refused to answer ; and for the commitment and detention of said Ephraim D. Whitcomb, this order shall be sufficient warrant ; and it is further ordered, that whenever the said Ephraim D. Whitcomb, while in custody under the foregoing order, shall inform the city messenger that he is willing to answer said question propounded by said committee, and to appear before said committee for that purpose, it shall be the duty of the city messenger to take said Ephraim D. Whitcomb immediately before the common council and hold him subject to its order."

On this warrant was indorsed the return of the city messenger, to the effect that he had on March 9, 1876, conveyed Ephraim D. Whitcomb to the said jail in Boston, and delivered him to the keeper thereof, with an attested copy of the order and his return indorsed thereon.

The return of the sheriff, who was also keeper of the common jail, to the writ, justified by virtue of the order of the common council.

Hearing before *Morton*, J., who reserved the questions arising on the above papers for the consideration of the full court, and admitted the petitioner to bail in the sum of one thousand dollars.

*H. J. Boardman*, for the petitioner.

*J. P. Healy & H. W. Putnam, contra.* The St. of 1863, c. 158, is constitutional. If it be said that the Legislature cannot confer such power upon a tribunal which has not judicial functions, the answer is that the common council of the city of Boston has judicial functions. It has authority to decide upon all questions relative to the qualifications, election and returns of its members. City Charter, St. 1854, c. 448, § 24. *Burnham* v. *Morrissey*, 14

Gray, 226, 239. Const. Mass. *c.* 1, § 1, art. 3. The investigation in question, being as to the receipt of money by members for votes, affected their right to seats in the common council, and was therefore within its jurisdiction. Gen. Sts. *c.* 163, § 8. All courts of record have at common law the right to imprison for contempt by summary process without trial by jury. 2 Bish. Crim. Law, (5th ed.) § 269. 4 Bl. Com. 283 *& seq.* 1 Com. Dig. (5th ed.) 711, note. *Thwing* v. *Dennie*, Quincy, 338. *Hollingsworth* v. *Duane*, Wall. C. C. 77. The same common law right is incidental to all legislative bodies, irrespective of special grant in the Constitution, and the common council would therefore have the right even independently of the St. of 1863, *c.* 158. *Anderson* v. *Dunn*, 6 Wheat. 204. *State* v. *Matthews*, 37 N. H. 450. St. 1854, *c.* 448, § 35.

GRAY, C. J. By the twelfth article of the Declaration of Rights prefixed to the Constitution of the Commonwealth, " no subject shall be arrested, imprisoned, despoiled or deprived of his property, immunities or privileges, put out of the protection of the law, exiled, or deprived of his life, liberty or estate, but by the judgment of his peers or the law of the land."

This article is a reënactment of the provision of Magna Charta, *c.* 29, that " no freeman shall be taken or imprisoned, or be disseised of his freehold, or liberties, or free customs, or be outlawed or exiled, or any other wise destroyed; nor will we not pass upon him, nor condemn him, but by lawful judgment of his peers, or by the law of the land."

In Massachusetts, as in England, the power to commit for contempt has always existed in the higher courts of justice, and is part of the law of the land, within the meaning of Magna Charta and of our Declaration of Rights. Bac. Ab. Courts E. *In re Fernandes*, 6 H. & N. 717, and 10 C. B. (N. S.) 3. *In re Chiles*, 22 Wall. 157. *Cartwright's case*, 114 Mass. 230, and authorities cited.

Justices of the peace are recognized in the Constitution of the Commonwealth as exercising a part of the judiciary power, and are for some purposes courts of record. Const. Mass. *c.* 3, art. 3, *Thayer* v. *Commonwealth*, 12 Met. 9. Their authority to punish for contempts, at least so far as is indispensable to the orderly conducting of their business, and especially in the case of the

refusal of witnesses, after due summons and payment of their fees, to appear and testify before them, has been generally admitted, and has been regulated by statute from the earliest time of the Commonwealth. St. 1784, c. 28, § 6. Rev. Sts. c. 85, § 33, and Commissioners' note to § 31. St. 1838, c. 42. Gen. Sts. c. 120, § 50; c. 131, §§ 5, 6. *Clarke's case*, 12 Cush. 320. *Piper* v. *Pearson*, 2 Gray, 120. *State* v. *Copp*, 15 N. H. 212. *In re Cooper*, 32 Vt. 253.

The constitutionality of the provision, first introduced in the St. of 1838, c. 42, and reënacted in the Gen. Sts. c. 131, §§ 5, 6, giving to masters in chancery and auditors a like power over witnesses, may admit of more doubt. According to the usual practice in chancery, an attachment against a witness for contempt before a master requires an application to the court. *Middleton* v. *Speright*, Cary, 80. *The King* v. *Almon*, Wilmot, 243, 269. 2 Dan. Ch. Pract. (4th Am. ed.) 1178, 1198. 78th Equity Rule of U. S. Courts, 17 Pet. lxxiv. A like practice is prescribed by act of Congress in the cases of commissioners to take depositions to be used abroad, and of registers in bankruptcy. U. S. Rev. Sts. §§ 4071–4073, 4999, 5002, 5005, 5006. See also *Ex parte Doll*, 7 Phila. 595. So a witness who refuses to be sworn or to testify before a grand jury must be brought before the court to be dealt with. *Heard* v. *Pierce*, 8 Cush. 338. Yet, as a master or auditor is transacting the judicial business of the court, and is under its authority and control, he may perhaps be intrusted by the Legislature with this power. But we have no occasion now to consider that question, nor the validity of the statutes conferring a similar power upon county commissioners, who, though often called a court, and authorized to determine many questions between parties, do not hold their offices by the same appointment or tenure as judges. Gen. Sts. c. 10, §§ 1, 6; c. 17, § 14; c. 131, §§ 5, 6. *Stone* v. *Charlestown*, 114 Mass. 214, 225. *Morrison* v. *McDonald*, 21 Maine, 550, 556.

Each house of the British parliament had the largest power to punish every description of contempt of its authority. *Crosby's case*, 3 Wils. 188; *S. C.* 2 W. Bl. 754. *Burdett* v. *Abbott*, 14 East, 1, and 5 Dow, 165. *Case of the Sheriff of Middlesex*, 11 A. & E. 273; *S. C. nom. The Queen* v. *Gossett*, 3 P. & D. 349. But, according to the decisions of most eminent judges,

either branch of a colonial legislature has no such power of punishment; *Kielley* v. *Carson*, 4 Moore P. C. 63; *Hill* v. *Weldon*, 3 Kerr N. B. 1; even for refusal to attend as a witness when duly summoned; *Fenton* v. *Hampton*, 11 Moore P. C. 347; or for contempts committed in the face of the house; *Doyle* v. *Falconer*, L. R. 1 P. C. 328 — unless by established usage; *Beaumont* v. *Barrett*, 1 Moore P. C. 59; or by express act of the imperial parliament. *Dill* v. *Murphy*, 1 Moore (N. S.) 487. *Speaker* v. *Glass*, L. R. 3 P. C. 560. So in *Ex parte Brown*, 5 B. & S. 280, the Court of King's Bench held that the House of Keys, which was the lower branch of the Legislature of the Isle of Man, and had also judicial functions in appeals from the verdicts of juries, had no power to commit for contempt, when acting in its legislative capacity.

It is universally admitted that by the law of England a town or city council had no power, without express act of parliament, to make an ordinance with penalty of imprisonment, or to commit for contempt of its authority. Grant on Corp. 84–86. Parke, B., in 4 Moore P. C. 89. *Barter* v. *Commonwealth*, 3 Penn. 253.

The British parliament has supreme and uncontrolled power, and may change the Constitution of England, and repeal even Magna Charta, which is itself only an act of parliament. But in this Commonwealth the legislative, as well as the executive authority and the courts of justice, is controlled and limited by the written constitution, and cannot violate the safeguards established by the twelfth article of the Declaration of Rights. *Emery's case*, 107 Mass. 172.

In the United States, each branch of a supreme legislature has the same power to commit for contempt as either house of parliament. Such a power has been adjudged to be inherent in the federal Senate and House of Representatives, although not expressed in the Constitution. *Anderson* v. *Dunn*, 6 Wheat. 204. A like power doubtless exists in each branch of the General Court of Massachusetts, and of other state legislatures, which are supreme within their sphere, and not, like the colonial assemblies of Great Britain, created by and subordinate to the national legislature. *Burnham* v. *Morrissey*, 14 Gray, 226. *State* v. *Matthews*, 37 N. H. 450. *Falvey's case*, 7 Wis. 630.

But in *Anderson* v. *Dunn* the court said that "neither analogy nor precedent would support the assertion of such powers in any other than a legislative or judicial body." 6 Wheat. 233, 234. To such a subject the words of Lord Coke apply with peculiar force: "When authority and precedent is wanting, there is need of great consideration, before that anything of novelty shall be established, and to provide that this be not against the law of the land." 12 Rep. 75.

At the time of the adoption of the Constitution of the Commonwealth, it was no part of the law of the land that municipal boards or officers should have power to commit or punish for contempts. The second article of amendment of the Constitution, which first conferred upon the General Court "full power and authority to erect and constitute municipal or city governments in any corporate town or towns in this Commonwealth," authorized it to grant to the inhabitants thereof such powers, privileges and immunities, "not repugnant to the Constitution," as it should deem necessary and expedient for the regulation and government thereof; and provided "that all by-laws made by such municipal or city government shall be subject at all times to be annulled by the General Court."

The city council is not a legislature. It has no power to make laws, but merely to pass ordinances upon such local matters as the Legislature may commit to its charge, and subject to the paramount control of the Legislature. Neither branch of the city council is a court, or, in accurate use of language, vested with any judicial functions whatever. Nor are its members chosen with any view to their fitness for the exercise of such functions. To allow such a body to punish summarily by imprisonment the refusal to answer any inquiry which the whole body, or one of its committees, may choose to make, would be a most dangerous invasion of the rights and liberties of the citizen.

The Legislature, in the exercise of the power given it by the Constitution, has vested in the board of aldermen and common council authority to decide upon all questions relative to the qualifications, elections and returns of their respective members, and might authorize — we are not now called upon to decide whether it has authorized — them to expel members for sufficient

cause. St. 1854, c. 448, § 24. *Peabody* v. *School Committee of Boston*, 115 Mass. 383. *State* v. *Jersey City Common Council*, 1 Dutcher, 536. The Legislature may also provide for the punishment, upon indictment and trial in the courts of justice, of any person who, being duly summoned, refuses to appear and testify before any board or tribunal upon a matter which it is authorized by law to investigate or decide. But the Legislature cannot delegate to or confer upon municipal boards or officers, that are not courts of justice, and whose proceedings are not an exercise of judicial power, the authority to imprison and punish, without right of appeal or trial by jury.

The result is that so much of the St. of 1863, c. 158, as undertakes to confer such authority upon either branch of a city council, or upon the selectmen of a town, is inoperative and void, because it is a violation of the Constitution of the Commonwealth and contrary to the law of the land.

*Prisoner discharged.*