EX PARTE ALBERT G. WOLF.

No. 13578.   Delivered October 15, 1930.
Rehearing denied January 21, 1931.
Reported in 34 S. W. (2d) 277.

The opinion states the case.

*John M. Corbett* of Bay City, *W. H. Wilson* and *John E. Green, Jr.,* both of Houston and *Oswald S. Parker* of Beaumont, for applicant.

*James R. Dougherty* of Beeville, *David M. Picton, Jr.,* and *Wm. G. B. Morrison,* both of Houston and *A. A. Dawson,* State's Attorney, of Austin, for the State.

MARTIN, JUDGE.—This is an original application to this Court for a writ of habeas corpus. Relator was restrained of his liberty by the Sheriff of Harris County, under an order directed to such Sheriff by A. J. Rosenthal, a notary public of Harris County, Texas. His imprisonment as shown by the record was occasioned by his refusal to answer certain oral interrogatories propounded to him before said notary public, who was at the time acting under a commission issued out of the District Court of Wharton County in

Cause No. 9292, styled Texas Gulf Sulphur Co. v. T. M. Neal et al., on the civil docket of said court.

It is here contended, and very convincingly argued, that the act of the notary public in adjudging relator to be in contempt, fining him $25.00 and ordering his imprisonment in the county jail for three days and "until such time as the said Albert G. Wolf shall have purged himself of such contempt by answering said interrogatories," was void. Among other constitutional reasons given is that a notary is denied the right to exercise any judicial power by the terms of Art. 5, Sec. 1, of the Texas Constitution, that a notary public is not a "court" and cannot, as was done in this case, assume to perform judicial functions.

We are met at the threshold of this controversy with a line of decisions by this court which has uniformly refused to entertain jurisdiction of an application for a habeas corpus writ which grew out of proceedings incident to a civil case. We quote from some of these:

From Ex parte Cummings, 75 Tex. Crim. Rep. 71:

"In this case the questions raised are: First, that the information sought is not evidence to be perpetuated, but information on which to base a suit,—a proceeding in the nature of a common law bill of discovery; second, that a notary cannot commit one to jail for refusal to answer interrogatories propounded to him. These questions are mainly incident to civil proceedings, and have very little, if any, connection with criminal matters, and as the commitment grows out of a writ issued in a civil proceeding, we think the appeal should be to the Supreme Court and not this court, for the reasons stated in the Mussett and Zuccaro cases supra. The pleadings raise the right to bring a civil action of the character instituted in this suit, as well as the constitutionality of the statute authorizing notaries to imprison for contempt."

From Ex parte Albritton, 87 Tex. Crim. Rep. 453:

"The relief will not be granted for the reason that the Supreme Court is by statute given authority to entertain applications for writs of habeas corpus in cases in which the restraint grows out of a civil case. Revised Statutes, Art. 1529. In deference to this statute and the reasons that impelled the Legislature to enact it as stated, in various decisions of this court, it has refrained from granting writs of habeas corpus in cases of contempt growing out of the alleged disobedience of an order entered in a civil case. Ex parte Houston, 87 Texas Crim. Rep., 8; 219 S. W. Rep., 826; Ex parte

Alderete, 83 Texas Crim. Rep., 358; 203 S. W. Rep., 764; Ex parte Gregory, 85 Texas Crim. Rep., 115; 210 S. W. Rep., 205."

From Ex parte Little, 83 Tex. Crim. Rep. 376:

"Proceedings under this statute we regard as civil in their nature. Instances are numerous in which this has been declared. See cases cited in Miller v. State, 200 S. W. Rep., 389, motion for rehearing; Ex parte Singleton, 72 Texas Crim. Rep., 122; Ex parte Reed, 34 Texas Crim. Rep., 9; Legate v. Legate, 87 Texas, 248; Ex parte Reeves, 100 Texas, 617. The Supreme Court is given jurisdiction of habeas corpus proceedings growing out of a civil cause. See art. 5, sec. 3, of the Constitution and by the Revised Civil Statutes of 1911, art. 1529. While this court also has jurisdiction to issue a writ of habeas corpus when one is illegally restrained of his liberty, article 5, section 5, of the constitution, we will not exercise it as against an order made in a civil case but will relegate the applicant to the pursuit of his remedy in the courts of civil jurisdiction. Ex parte Alderete, not yet reported; Ex parte Mussett, 72 Texas Crim. Rep., 487."

The instant case furnishes, if such is needed, a compelling reason for adherence to the rule announced in the above cases. Of the proceedings in the civil case out of which this controversy arose, we have here only its number and style. If, however, we were furnished all data needed to properly appraise the issues and the materiality and relevancy of testimony concerning these, and other elements which might in some cases enter into the question of the legality of a commitment, we ought manifestly not to go into such matters, as we might find ourselves in conflict with the civil courts, and thus interfere with their proper functioning and the administration of justice.

Of course, if it is plainly apparent that a notary public has no authority under the law to imprison for contempt in any case and that to so hold could not put us in opposition to the civil courts nor hamper the administration of justice in these, it would, we think, be our duty to assume jurisdiction of this case. An investigation of this question has not convinced us that such a power has been withheld by the constitution and statutes from a notary public. If such question involves a construction of constitutional provisions and statutory enactments, any express decision by us in a matter which pertains strictly to a civil case would not be binding upon the Supreme Court and if in opposition to its views, might lead to confusion. In order to demonstrate only that it is not plain and

certain that the act of the notary public in this instance was utterly void, we make the following observations:

Art. 4, Sec. 26, of the Constitution of Texas, provides:

"The Governor, by and with the advice and consent of two-thirds of the Senate, shall appoint a convenient number of Notaries Public for each county who shall perform such duties as now are or may be prescribed by law."

The language "as *now are* or may be prescribed by law" is of particular significance. The right of a notary public to imprison for contempt is expressly given by Art. 3748, R. C. S., 1925, and such right existed at the time of the adoption of our present constitution and had for many years prior thereto, as shown by the language of legislative enactments made prior to 1876 almost identical with that of Art. 3748, supra. See Hartley's Digest, Art. 726; Paschal's Digest, Art. 3727. If the right of a notary public to imprison for contempt existed at the time the above language was inserted into the constitution "who shall perform such duties as now are * * * prescribed by law", then it may be plausibly contended that the constitution itself conferred such power. Of the cases which deny this right to a notary public, the two apparently relied on by relator and which seem to be the leading cases in the United States are those of Re Huron, 58 Kansas, 152, and Whitcomb's Case, 120 Mass. 118. We take the following significant language from each of these cases:

"Anciently such officers were not clothed with judicial power and when the Constitution was adopted they were not regarded as having power to punish for contempt, nor to be in any sense judicial officers." Re Huron, 58 Kan. 152.

"At the time of the adoption of the Constitution of the Commonwealth, it was no part of the law of the land that municipal boards or officers should have power to commit or punish for contempts." Whitcomb's Case, 120 Mass. 123.

From this language the right of the officer under discussion to punish for contempt was not recognized by the constitution in either of the respective jurisdictions mentioned, but not so in Texas. While such officer unquestionably has the statutory right to imprison for contempt (and apparently with the express approval of the Constitution by the terms of the article quoted above), we are not able to believe that the Legislature has meant to vest such officer with the despotic power to imprison a recusant witness for refusal to answer every question, regardless of its character or materiality. As

to the limitations of the power of the notary, the statute is not specific and to clarify them legislative action may be necessary. It may be assumed, however, that his right to compel an answer to a question would have some relation to the relevancy of the inquiry and could not be exercised arbitrarily. By the language of Art. 3748, supra, such an officer could have no greater power than the district and county courts and the right of these courts to imprison for contempt is not an arbitrary and unbridled one. The following cases illustrate some of the limitations placed upon the courts in such matter; Holman v. Mayor of Austin, 34 Tex. 673; Ex parte Gould, 60 Tex. Crim. Rep. 442, and authorities collated in Branch's P. C., Sec. 277. We mention this in an endeavor to demonstrate that the right to imprison for contempt is in no case such an arbitrary and final one as would preclude inquiry by a proper tribunal. This being true, if we were able to hold that a notary public has been clothed with the right in a proper case to imprison for contempt, we might next be led into a discussion and analysis of the legality of such action under the particular facts of the case, which in turn clearly invades a phase of the law which might involve us in a controversy with the civil courts. In our opinion the relator is not without his remedy in the civil courts, and to these we will leave his case for any remedial solution to which he may show himself entitled under the law.

The application is dismissed.

*Dismissed.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

ON MOTION FOR REHEARING.

LATTIMORE, JUDGE.—Upon three propositions set forth, relator moves to reinstate. It is necessary to discuss but one proposition, which is that this court should hear and determine the issues involved herein because of the fact that it received a petition, and also granted bail to relator,—it being insisted that by such action this court asserted and exercised jurisdiction of this proceeding, and having gone thus far should proceed in line with what we said and did in the case of Ex parte Alderete, 83 Texas Crim. Rep. 358. Analogy of what was said and done in the case mentioned, is not perceived. In that case a petition for habeas corpus was here presented from whose averment of restraint we were unable to tell if

same resulted from or grew out of a civil proceeding or otherwise. The writ therein sought was granted. Thereafter, and when informed by further development that the restraint was incident to a civil proceeding, while we said that the petition should have been presented to the Supreme Court originally, still this court having issued its writ under such circumstances, would and did proceed to a decision of the issues.

Since its organization this court, by express direction of the Constitution, has had the right and power in all cases to issue writs of habeas corpus, but since 1905 when a law was enacted, which is now Art. 1737, Revised Civil Statutes, 1925, which conferred upon the Supreme Court and its members authority to issue such writ in cases when any person is restrained of his liberty by virtue of any order, etc., made in civil cases,—this court, while not doubting our power in such causes, has believed propriety and comity better served, and possible clashing of conclusions and views better prevented by our declining to issue such writs in cases arising out of or incident to civil proceedings.

In the case before us no writ was by us issued, as was done in the Alderete case, supra. The mere filing of a petition for the writ of habeas corpus, and the granting by one member of this court of bail pending a hearing before the whole court, the purpose of which would not be to determine the merits of the petition but to ascertain if in fact such writ should be granted by us, was not, in our opinion, the assertion or exercise of jurisdiction over the particular case by the court. There is no question but that from the averments of the petition in this case, it appears to pertain to a civil proceeding.

Entertaining convictions regarding the interesting questions raised by the petition, may have induced utterances regarding the issues involved from the writer of the opinion, beyond what was necessary to a mere announcement of refusal to assume jurisdiction, but we feel ourselves committed to the doctrine of the original opinion, and to that announced by our Presiding Judge in the Alderete case, supra, in the following language:

"This court will refrain from issuing writs of habeas corpus against restraint under orders in a civil case because it is more orderly and expedient that the Supreme Court should pass upon such habeas corpus proceedings as are placed within its jurisdiction by the statute mentioned above. So in a contempt proceeding where it appears that it grows out of an alleged failure to observe an order

in a civil cause this court will refuse to grant the writ relegating the party to his remedy in the Supreme Court."

The relator's motion to reinstate will be denied.

*Denied.*