# Proposed Legislation to Grant Additional Power to The President's Commission on Organized Crime

The President's Commission on Organized Crime, a Presidential advisory committee with members from the Legislative and Judicial Branches, may be granted subpoena power without violating the Appointments Clause, U.S. Const. art. II, § 2, cl. 2, or the Incompatibility Clause, *id.,* art. I, § 6, cl. 2. As statutory aids to its investigation, the Commission should also seek the power to administer oaths and to have false statements punished as perjury.

Constitutional and policy concerns militate against seeking independent authority for the Commission to enforce subpoenas by holding individuals in contempt, or to grant use immunity. The power to grant use immunity raises questions about the Commission's advisory role and the propriety of service by members of the Legislative and Judicial Branches.

August 24, 1983

MEMORANDUM OPINION FOR THE ASSOCIATE ATTORNEY GENERAL

On July 28, 1983, President Reagan established the President's Commission on Organized Crime (Commission), as an advisory committee under the Federal Advisory Committee Act (FACA), 5 U.S.C. app. I. *See* Exec. Order No. 12435, 48 Fed. Reg. 34723 (1983). Its duties are purely investigatory in nature, and will culminate in a final report to the President and the Attorney General.[1] The Commission's membership includes a federal judge, two members of Congress and numerous private citizens.[2]

---

[1] As stated in § 2(a) of the Executive Order:

The Commission shall make a full and complete national and region-by-region analysis of organized crime; define the nature of traditional organized crime as well as emerging organized crime groups, the sources and amounts of organized crime's income, and the uses to which organized crime puts its income; develop in-depth information on the participants in organized crime networks; and evaluate Federal laws pertinent to the effort to combat organized crime. The Commission shall advise the President and the Attorney General with respect to its findings and actions which can be undertaken to improve law enforcement efforts directed against organized crime, and make recommendations concerning appropriate administrative and legislative improvements and improvements in the administration of justice.

[2] *See* Leslie Maitland Werner, *President Chooses 20 as Members of Organized Crime Commission,* N.Y. Times, July 19, 1983, at A1, col. 2. The members include Judge Irving R. Kaufman, Senator Strom Thurmond, Representative Peter W. Rodino, Jr., former Supreme Court Justice Potter Stewart, as well as sixteen other individuals drawn from outside the federal government. As this office has stated on many occasions, member of Congress and federal judges may sit on purely advisory committees without violating either the Appointments Clause, U.S. Const. art. II, § 2, cl. 2, or the Incompatibility Clause, *id.,* art. I, § 6, cl. 2. Membership on a purely advisory committee does not constitute holding an "Office" under the Constitution because such committees possess no enforcement authority or power to bind the Government. *See* 26 Op. Att'y Gen. 247 (1907); 24 Op. Att'y Gen. 12 (1902); 22 Op. Att'y Gen. 184 (1898); H.R. Rep. No. 2205, 55th
Continued

Pursuant to your request, this memorandum addresses the issue of what additional powers the Commission might seek from Congress as aids to its investigation. Of the five that have been suggested — the power to issue subpoenas, to administer oaths, to hold individuals in contempt, to grant individuals immunity, and to have false statements to the Commission be subject to prosecution for perjury — we believe that the Department should only seek the powers to issue subpoenas and administer oaths and to have false statements punished as perjury.

## I. The Power to Issue Subpoenas and Administer Oaths

A subpoena is a formal demand that instructs an individual to produce either testimonial or documentary evidence.[3] Some have suggested that the grant of subpoena powers will in some fashion preclude the Commission from being a purely advisory body. We disagree. As discussed below, the subpoena power has been used by all three branches of the Government and by the public as an investigative tool. Issuing a subpoena is not a purely executive function which may only be exercised by officers of the Government nor is it a coercive or adjudicatory power that may only be exercised by the judiciary. Rather, it is a power that may be granted to those authorized to investigate, regardless of their other functions.

Subpoena power has been granted to groups and individuals in many contexts. These include investigations conducted by members of all three branches of the Government, *i.e.,* Congress, 2 U.S.C. § 190m, the Judiciary, 43 U.S.C. § 1619(d)(8), and Executive Branch agencies, 49 U.S.C. § 12(1), as well as civil suits where any party may request one. Fed. R. Civ. P. 45.[4] Historically, the power has also been given to some Presidential commissions.[5]

---

[2] (. . . continued)
Cong., 3d Sess. 48–54 (1899); E. Corwin, *Presidential Power and the Constitution* 73–74 (R. Loss ed. 1977). For the discussion of judges serving in the Executive Branch in more than advisory capacities, *see Independence of Judges: Should They Be Used for Non-Judicial Work?,* 33 A.B.A.J. 792 (1947). *See also* 40 Op. Att'y Gen. 423 (1945); Memorandum for Ramsey Clark, Assistant Attorney General, Lands Division from Norbert A. Schlei, Assistant Attorney General, Office of Legal Counsel (Nov. 27, 1963) ("Whether the President should call upon Federal judges to engage in nonjudicial functions for the Federal Government is basically a matter of policy."). Ironically, the very absence of an Incompatibility Clause for judges makes them more vulnerable than Congressmen to criticism. Because they are able to accept positions in the Executive Branch, the public's attention is focused on the issue and questions are raised about whether the independence of the judiciary is being compromised.

[3] *See, e.g.,* 7 U.S.C. § 2717 (investigation of egg production by the Secretary of Agriculture) ("For the purpose of such investigation, the Secretary is empowered to administer oaths and affirmations, subpoena witnesses, compel their attendance, take evidence, and require the production of any books, papers, and documents which are relevant to the inquiry.").

[4] Originally, the courts resisted congressional grants of subpoena power to agencies, *see In re Pacific Ry. Comm'n,* 32 F. 241 (N. Cir Ca. 1887), and for many years the Supreme Court read the grants restrictively. *Jones v. SEC,* 298 U.S. 1 (1936); *FTC v. Baltimore Grain,* 267 U.S. 586 (1924). This attitude began to change in the 1940s, however, and it is now firmly settled that agencies may issue investigatory subpoenas that will be enforced by the courts if the investigation is authorized and the information sought is relevant. *Oklahoma Press Publishing Co. v. Walling,* 327 U.S. 186, 209 (1946). *See generally* 3 B. Mezines, J. Stein, J. Gruff, *Administrative Law* § 20.01 (1982) (Mezines); K. Davis, *Administrative Law Treatise* (1958) (Davis).

[5] Mezines, *supra* note 4, § 19.01, at 192 n.2; *infra* notes 7, 8.

The reason that subpoena powers may be granted to so many diverse groups without running afoul of either the Appointments Clause, U.S. Const. art. II, § 2, cl. 2, or the Incompatibility Clause, *id.,* art. I, § 6, cl. 2, or the general doctrine mandating separation of powers, is two-fold. First, the subpoena power is not tied to any particular branch; it is not one of the functions described by the Supreme Court as lodged exclusively in either the Executive, the Judiciary or Congress. *Buckley* v. *Valeo,* 424 U.S. 1, 137–41 (1976). Second, the power to issue a subpoena has not been viewed as the exercise of a coercive power; thus, no matter what the issuing agent finds out, it cannot, in the absence of any other power, use the information to *do* anything, such as enact or execute a law, adjudicate a dispute, or otherwise "take any affirmative action which will affect an individual's rights." *Hannah* v. *Larche,* 363 U.S. 420, 441 (1960) (describing powers of the Civil Rights Commission). Thus, the power to issue a subpoena does not intrude upon either the powers of a particular branch or the legal rights of an individual. Although the document issued is styled as a command, the issuing authority is in fact dependent upon the courts for enforcement:

> Though often complied with — to earn good will, for other tactical reasons, or out of ignorance that no obligation has yet attached — an agency subpoena typically has no independent force . . . . The obligation to respond is determined only upon judicial review of the underlying order.

W. Gellhorn, C. Byse, P. Strauss, *Administrative Law* 553–54 (1979). It is only when we reach the issue of actually enforcing subpoenas, discussed below, that constitutional issues about functions reserved to the individual branches arise.

Therefore, this Office has, on more than one occasion, approved the grant by Congress of subpoena powers to Presidential commissions that are purely advisory in nature and that have members of the Legislative or Judicial Branch on them. For example, in 1963 this Office approved a bill establishing the Commission on Political Activity of Government Personnel, 5 U.S.C. App. § 118i note (Supp. II 1965–66), a commission composed of at least four congressmen and two members of the Executive Branch and charged with investigating federal laws that limited political activity by federal employees. Pub. L. No. 89–617, §§ 2, 7, 80 Stat. 868 (1966).[6] The Commission was granted subpoena powers, id. § 8(a), and we were specifically asked whether the presence of congressmen created any legal problems. Our response was clear: "We are not aware of any grounds, based upon legal, constitutional or policy considerations, upon which to question the provisions of § 8(a)." Memorandum for Nicholas deB. Katzenbach, Deputy Attorney General from Norbert A. Schlei, Assistant Attorney General, Office of Legal Counsel (Dec. 20, 1963).[7]

---

[6] Memorandum for Nicholas deB. Katzenbach, Deputy Attorney General from Norbert A. Schlei, Assistant Attorney General, Office of Legal Counsel (May 1, 1963).

[7] In passing, we pointed out two similar commissions that had had subpoena powers — the Hoover Commission, and the Commission on Intergovernmental Relations. *See* Pub. L. No. 83–184, 2, 3, 67 Stat.

Continued

130

We have reached the same conclusion where the Commission includes members of the Judiciary, such as the Warren Commission.[8] Memorandum for J. Lee Rankin, General Counsel, The President's Commission from Norbert A. Schlei, Assistant Attorney General, Office of Legal Counsel (Jan. 16, 1964). An earlier commission headed by a judge was the Commission to Investigate the Japanese Attack of December 7, 1941, on Hawaii, chaired by Associate Justice Owen J. Roberts. Exec. Order No. 8983, 3 C.F.R. 1046 (1938–1943 Comp.); Pub. L. No. 77–370, 55 Stat. 853 (1941) (granting subpoena powers). See also National Commission on the Causes and Prevention of Violence, Exec. Order No. 11412, 3 C.F.R. 726 (1966–70 Comp.); Pub. L. No. 90–338, 82 Stat. 176 (1968) (Judge A. Leon Higginbotham, Jr.).

We believe, therefore, that it is permissible for the Department to seek subpoena powers for the Commission. There is no difficulty with the members of the Commission also being given the power to administer oaths. This is commonly included when Congress grants the power to issue subpoenas.[9] The power to administer oaths is useful not only in creating an air of serious purpose but also in bringing perjury charges.

## II. The Power to Enforce Subpoenas by Holding an Individual in Contempt

When an individual refuses to comply with a subpoena, an agency must go to court, represented either by agency lawyers or by the Attorney General, to have it enforced.[10] We do not believe that the Department should seek independent contempt authority for the Commission — *i.e.*, legislation that would permit

---

[7] (. . . continued)
142, 143 (1953) (Commission on the Organization of the Executive Branch of the Government); Pub. L. No. 83–185, § 2, 67 Stat. 145 (1953). *See also* President's Commission on the Accident at Three Mile Island, Exec. Order No. 12130, 3 C.F.R. 380 (1980 Comp.); Pub. L. No. 96–12, 93 Stat. 26 (1979) (granting subpoena powers); Commission on Security and Cooperation in Europe, 22 U.S.C. § 3001 (1976); National Commission on Electronic Fund Transfers, 12 U.S.C. § 2401 (1976); Commission on Federal Paperwork, 44 U.S.C. § 3501 note (1976); Commission on Government Procurement, 41 U.S.C. § 251 note (1970); Committee to Investigate Federal Expenditures, 26 U.S.C. § 3600 (1946); Temporary National Economic Committee, Pub. L. No. 75–456, 52 Stat. 705 (1938).

[8] The Warren Commission was formally known as the Commission to Report Upon the Assassination of President John F. Kennedy, Exec. Order No. 11130, 3 C.F.R. 795 (1959–63 Comp.). Subpoena powers were granted in Pub. L. No. 88–202, 77 Stat. 362 (1963).

[9] *See, e.g.,* 25 U.S.C. § 174 note (1976), where the American Indian Policy Review Commission is granted the power:
> to administer such oaths and affirmations and to take such testimony . . . as it deems advisable
> . . . . The Chairman of the Commission or any member thereof may administer oaths or affirmations to witnesses.
*Id.*; Pub. L. No. 93–580, § 3(a), 88 Stat. 1910 (1975).

[10] As a general rule, application is made to the judge for an order directing the subpoenaed individual to comply. W. Gellhorn, C. Byse, P. Strauss, *Administrative Law* 573 (1979). If that order is ignored, a separate proceeding is held to determine whether the individual should be held in contempt for failure to obey the court order. *Id.* Some statutes compress these two steps into a one-stage proceeding in which the agency certifies to the court that its subpoena has been disobeyed; then the court is supposed to hold a summary hearing to determine if this is true and, if so, to punish as for contempt of court. *Id.* at 575. "In actuality, the courts behave under these statutes just about as they do in the two-stage proceedings discussed earlier." *Id.*

131

the Commission to hold individuals in contempt on its own motion — because of both constitutional and policy objections.

In 1894, the Supreme Court stated that the Interstate Commerce Commission could not, consistent with due process, enforce its own subpoenas by being given the power to commit or fine people for disobedience. *ICC* v. *Brimson,* 154 U.S. 447 (1894). *Brimson* involved the issue of whether Congress had the authority to authorize the ICC to enforce its subpoenas in court. In concluding that it did, the Court appeared to say that in fact only the courts could enforce the subpoenas:

> The inquiry whether a witness before the Commission is bound to answer a particular question propounded to him, or to produce books, papers, etc., in his possession and called for by that body, is one that cannot be committed to a subordinate administration or executive tribunal for final determination. Such a body could not, under our system of government, and consistently with due process law, be invested with authority to compel obedience to its orders by a judgment of fine or imprisonment. Except in the particular instances enumerated in the Constitution, and considered in *Anderson* v. *Dunn,* 6 Wheat. 204, and in *Kilbourn* v. *Thompson,* 103 U.S. 168, 190, of the exercise by either house of Congress of its right to punish disorderly behavior upon the part of its members, and to compel the attendance of witnesses, and the production of papers in election and impeachment cases, and in cases that may involve the existence of those bodies, the power to impose fine or imprisonment in order to compel the performance of a legal duty imposed by the United States, can only be exerted, under the law of the land, by a competent judicial tribunal having jurisdiction in the premises. See *Whitcomb's Case,* 120 Mass. 118, and authorities there cited.

*Id.* at 485. Since then, Congress has consistently required agencies to apply to the courts for an order to compel compliance with a subpoena. It has "never" conferred the power to enforce a subpoena on an issuing agency. L. Jaffe & N. Nathanson, *Administrative Law* 439 (1976). Thus, there has been no occasion for the Court to re-examine the issue of whether the *dictum* in Brimson is still good law.

There has been continuing debate on the issue among the commentators.[11] *Brimson's* analysis appears to rest upon the idea "that the contempt power is necessarily judicial, and [yet] the Supreme Court has unanimously held that legislative bodies may punish for contempt."[12] One commentator has noted

---

[11] *See* Davis, *supra* note 4, at 214–15; Note, *Use of Contempt Power to Enforce Subpoenas and Orders of Administrative Agencies,* 71 Harv. L. Rev. 1541 (1958).

[12] Davis, *supra note 4, at 214 (citing Jurney* v. *MacCracken,* 294 U.S. 125 (1935) and McGrain v. Daugherty, 273 U.S. 135 (1927)).

that grants of contempt power to both Congress and the courts are grounded in expediency, not in the particular nature of the power:

> The power of contempt is said to inhere in courts only because they must have it to perform their functions. The judicial extension of the power to Congress was justified solely on grounds of expediency. To the extent, therefore, that the agency requires the contempt power for the proper performance of its duties, the theoretical argument seems as strong as that which justifies the existence of the contempt powers of the other branches of government.

Note, *Use of Contempt Power to Enforce Subpoenas and Orders of Administrative Agencies,* 71 Harv. L. Rev. 1541, 1551 (1958) (footnotes omitted). At least one federal court, irritated by the delay engendered by resistance to agency subpoenas, has criticized the continued denial of contempt power to federal agencies.[13] The fact remains, however, that *Brimson* is the Supreme Court's last word on the subject and in that case the Court did distinguish Congress' contempt power as being rooted in the Constitution and historical precedent.

Although modern legal theory is less hostile to agency action than when *Brimson* was decided, there is at the same time more sensitivity to arguments that due process requires that the prosecutor not also be the judge.[14] We are reluctant to advise that it is permissible to seek contempt authority for the Commission. This is especially true when there is no need to press for this extraordinary power. Other Presidential commissions, charged with equally important tasks, have been able to rely on the courts to enforce their subpoenas. Likewise, federal agencies have functioned to Congress' satisfaction for decades without this power. Moreover, there are policy objections to seeking the authority. Requesting contempt power would be very controversial, endangering the Department's ability to secure the most important part of the legislation — the subpoena power. Traditional notions of fair play and substantial justice, as well as concerns about the separation of powers, tend to militate against, at least on policy grounds, granting such a power to a Commission composed, as this one is, of members from all three branches of the federal government.

In fact, over the years Congress has decided that agencies should not have the power, perhaps in part due to a concern that agencies will misuse it, as the judiciary and legislatures themselves at times have done.[15] As Justice Frankfurter observed:

---

[13] *Federal Maritime Comm'n* v. *New York Terminal Conference,* 373 F.2d 424 (2d Cir. 1967). Judge Friendly said:

> Congress might well consider whether the long record of frustrations and less restrictive modern notions of the separation of powers might not make it wise to empower at least some administrative agencies to enforce subpoenas without having to resort to the courts in every case.

*Id.* at 426 n.2 (citations omitted). Some states have given their agencies the power to punish for contempt while others have denied it. Davis, *supra* note 4, at 215.

[14] *See, e.g., Ward* v. *Village of Monroeville,* 409 U.S. 57 (1972); *Morrissey* v. *Brewer,* 408 U.S. 471, 485–86 (1972).

[15] *See, e.g., Holt* v. *Virginia,* 381 U.S. 131 (1965) (state court); *Groppi* v. *Leslie,* 404 U.S. 496 (1972) (Wisconsin legislature).

133

Beginning with the Interstate Commerce Act in 1887, it became a conventional feature of Congressional regulatory legislation to give administrative agencies authority to issue subpoenas for relevant information. Congress has never attempted, however, to confer upon an administrative agency itself the power to compel obedience to such a subpoena. It is beside the point to consider whether Congress was deterred by constitutional difficulties. That Congress should so consistently have withheld powers of testimonial compulsion from administrative agencies discloses a policy that speaks with impressive significance.

*Pennfield Co.* v. *SEC,* 330 U.S. 585, 603–04 (1947) (Frankfurter, J., dissenting) (*dictum*). It is unlikely that Congress, having denied the power to permanent agencies — including those with quasi-judicial functions — for almost one hundred years, is going to confer such power on a temporary advisory commission. Requesting the authority would suggest to Congress either a disquieting ignorance of historical precedent or a presumptuous disregard of it. We do not believe the Department should ask Congress to grant contempt power to the Commission.

### III. The Power to Grant Immunity

It has also been suggested that the Department ask that the Commission be given the power to grant "use" immunity.[16] We assume that this would be done by adding the Commission to the list of authorized agencies in 18 U.S.C. § 6001(1).[17] Authorized agencies may, with the approval of the Attorney General, issue an order to an individual who is claiming his Fifth Amendment privilege, requiring him to testify.[18] Information derived from such testimony is barred from use against the witness in any criminal case.

---

[16] "Use" immunity provides immunity from prosecution based on the compelled testimony or evidence derived from that testimony, as distinguished from "transactional" immunity, which grants full immunity from prosecution of the offense to which the compelled testimony relates Use immunity was found to be coextensive with the Fifth Amendment's guarantee against self-incrimination in *Kastigar* v *United States,* 406 U.S. 441 (1972).

[17] Congress enacted the present immunity statute in 1970. 18 U.S.C. §§ 6001–6005. Authorized agencies are the basic executive and military departments, 5 U.S.C. §§ 101, 102, and about fifteen other agencies. 18 U.S.C. § 6001(1).

[18] 18 U.S.C. § 6004 provides.

> (a) In the case of any individual who has been or who may be called to testify or provide other information at any proceeding before an agency of the United States, the agency may, with the approval of the Attorney General, issue, in accordance with subsection (b) of this section, an order requiring the individual to give testimony or provide other information which he refuses to give or provide on the basis of his privilege against self-incrimination. Such order to become effective as provided in section 6002 of this part.
>
> (b) An agency of the United States may issue an order under subsection (a) of this section only if in its judgment —
>
>> (1) the testimony or other information from such individual may be necessary to the public interest; and
>>
>> (2) such individual has refused or is likely to refuse to testify or provide other information on the basis of his privilege against self-incrimination

134

Although the grant of use immunity to witnesses has been described as an executive function by some courts,[19] it is not clearly executive in the sense described in *Buckley* v. *Valeo,* 424 U.S. 1 (1976), because rather than being a power committed wholly to the Executive Branch, it is a statutory creation that has also been given to Congress and its committees. 18 U.S.C. § 6005.[20] The power to grant immunity is, however, a function that raises doubts about the Commission's role and the propriety of service on it by members of the legislature. As noted above, *see supra* note 2, we have described advisory committees as those that do not have the power to bind the Government. The power to grant use immunity is the power to bind the Government not to prosecute an individual for criminal conduct revealed through his testimony. Although it may not be an executive function for Congress to grant immunity for testimony heard pursuant to a legislative investigation, it may be an executive function for the Commission to grant immunity to witnesses in the course of an Executive Branch investigation. Executive functions may be performed only by officers of the government — which Congressmen may not be. Were a court to conclude that the Congressmen were without authority either to sit on the Commission or to vote on the grants of immunity, the work of the Commission could be imperiled. A court might nullify grants of immunity or restrict the Congressmen's role on the Commission. The same arguments can be made with respect to judges because the judiciary has neither inherent nor statutory power to grant immunity for judicial investigations.

The power to grant immunity is inevitably tied to prosecutorial decisions. This is especially true when the Commission is charged with investigating an area of special concern to federal prosecutors, such as organized crime. If, as seems likely, the Commission calls as a witness someone who has evidence of a crime or is the target of an ongoing criminal investigation, there are several ways a grant of immunity by the Commission might interfere with the Department's ability to prosecute. Most obviously, granting immunity could deprive the Department of a desired conviction by immunizing the witness. Given the current trend towards complicated, multi-year undercover operations, the Attorney General's statutory veto power, 18 U.S.C. § 6004(b), does not solve the problem. Even refusing to concur may alert an individual to the fact that he is the target of an ongoing or proposed investigation. Moreover, given the Commission's advisory nature, there is much less chance that there will be effective coordination with the Department's many units, scattered across the country, in order to avoid entanglement with such investigations. That the Department may have built a complete case without the compelled testimony — and, therefore, still be able to prosecute — is small comfort

---

[19] *See United States* v. *D'Aspice,* 664 F.2d 75, 77 (5th Cir. 1981) (judiciary has no inherent power to grant use immunity); *United States* v. *Lenz,* 616 F 2d 960, 962 (6th Cir.), *cert. denied,* 447 U.S. 929 (1980)

[20] The immunity statute covers only use immunity. If the statute granted transactional immunity, there would be a serious constitutional problem. Granting transactional immunity means that the individual cannot be prosecuted for the illegal conduct. We believe that the decision to grant transactional immunity is essentially a decision not to prosecute, and the decision whether to prosecute is an executive function in the *Buckley* sense. 424 U.S. at 138.

135

because the individual will undoubtedly try to prove that the case is derived from the compelled testimony and the burden of proof will be on the government to show the independent derivation of the case. *See, e.g., United States* v. *Provenzano,* 620 F.2d 985, 1005 (3d Cir.), *cert. denied,* 449 U.S. 889 (1980). Thus, a straightforward prosecution could suddenly be jeopardized by the intrusion of an unnecessary hurdle. We believe that this issue should be carefully reviewed before any final decision is made.

The same policy rationale that argues against seeking contempt powers also argues against seeking immunity. The power to grant immunity is an extraordinary tool given to a small core group of Executive Branch agencies, whose use should be carefully guided by consideration of potential or ongoing investigations. Obviously, the Commission might discover more if given the right to grant immunity; nevertheless, other Presidential commissions have done their work satisfactorily without it, and its availability seems unnecessary in light of the Commission's generally phrased task. We would strongly urge that the Department not seek the power to grant immunity for the Commission.

## IV. Prosecution for Perjury

There are presently two general statutes covering perjury and subornation of perjury. 18 U.S.C. §§ 1621, 1622.[21] Although these two statutes are occasionally incorporated by reference in statutes dealing with particular programs, *see, e.g.,* 30 U.S.C. § 49e; 8 U.S.C. § 1357(b), they may also be referred to by implication where, for example, a specific statute will merely say that the "person so falsely swearing shall be deemed guilty of perjury." 46 U.S.C. § 170(13). *See also* 22 U.S.C. § 4221. Other statutes set up their own punishments for false statements. See 18 U.S.C. § 1546. Which course to adopt would appear to be a policy choice but we would suggest that the litigating divisions, especially the Criminal Division, be consulted. If it is decided to rely on the general perjury statute, we are not aware of any reason why the Commission

---

[21] 18 U.S.C. § 1621 states:

Whoever —

   (1) having taken an oath before a competent tribunal, officer, or person, in any case in which a law of the United States authorizes an oath to be administered, that he will testify, declare, depose, or certify truly, or that any written testimony, declaration, deposition, or certificate by him subscribed, is true, willfully and contrary to such oath states or subscribes any material matter which he does not believe to be true; or

   (2) in any declaration, certificate, verification, or statement under penalty of perjury as permitted under section 1746 of title 28, United States Code, willfully subscribes as true any material matter which he does not believe to be true; is guilty of perjury and shall, except as otherwise expressly provided by law, be fined not more than $2,000 or imprisoned not more than five years, or both. This section is applicable whether the statement or subscription is made within or without the United States.

18 U.S.C. § 1622 states:

Whoever procures another to commit any perjury is guilty of subornation of perjury, and shall be fined not more than $2,000 or imprisoned not more than five years, or both.

*See also* 28 U.S.C. § 1746 (making unsworn statements subject to punishment for perjury).

would not fall within the category of "competent tribunal."[22] Nevertheless, we recommend that any proposed legislation include a specific provision referring to 18 U.S.C. § 1621 to eliminate any doubt that the general statute applies.[23]

## V. Possible Phrasing of Legislation

Grants of subpoena power vary, both in specificity and in the limits placed upon the grants.[24] The basic grant, which also includes the administration of oaths, is often phrased in terms similar to the following:

> The Commission shall have the power to issue subpoenas requiring the attendance and testimony of witnesses and the production of any evidence that relates to any matter under investigation by the Commission. The Commission or any member of the Commission may administer oaths and affirmations, examine witnesses, and receive evidence. Such attendance of witnesses and the production of such evidence may be required from any place within the United States at any designated place of hearing.

The next paragraph will generally cover the contempt power.

> In case of contumacy or refusal to obey a subpoena issued to any person under the previous paragraph, any district court of the United States, upon application by the Attorney General, shall have jurisdiction to issue to such person an order requiring a witness to appear before the Commission or its members, there to produce evidence if so ordered, or there to give testimony touching the matter under investigation or in question; and any failure to obey such order of the court may be punished by the court as a contempt thereof.

This basic formula can be varied in many ways: by permitting individual Commission members, when authorized, to issue subpoenas;[25] by limiting the subpoena to witnesses only, not documents;[26] by expanding the courts to which

---

[22] Testimony before investigative committees has often resulted in perjury convictions. *See United States* v. *Haldeman,* 559 F.2d 31, 102–04 (D.C. Cir. 1976) (Senate Select Committee on Presidential Campaign Activities), *cert. denied,* 431 U.S. 933 (1977); *Meyers* v. *United States,* 171 F.2d 800, 811 (D.C. Cir. 1948) (Senate subcommittee), *cert. denied,* 336 U.S. 912 (1949); *Boehm* v. *United States,* 123 F.2d 791, 800–01 (8th Cir. 1941) (SEC), *cert. denied,* 315 U.S. 800 (1942); *State* v. *Reuther,* 81 So. 2d 387, 388–89 (La. 1955) (Special Citizens Investigating Committee).

[23] Competence may also be affected by procedural requirements. For example, for a legislative committee to be competent, a properly constituted quorum must be present. *See Christoffel* v. *United States,* 338 U.S. 84 (1949); *United States* v. *Reincke,* 524 F.2d 435, 437 (D.C. Cir. 1975).

[24] *Compare* 5 U.S.C. § 8126(1) (Secretary of Labor) with 22 U.S.C. § 1623(c) (Foreign Claims Settlement Commission).

[25] Pub. L. No. 96–12, § 2(a), 93 Stat. 26 (1979). Alternatively, issuance of subpoenas by the Commission could be made pursuant to a vote of two-thirds or three-quarters of the members, rather than a simple majority.

[26] 5 U.S.C. § 304(a).

the Attorney General may apply;[27] by limiting the distance witnesses may be forced to travel;[28] or by permitting witnesses to be excused by the court if the required testimony or evidence would tend to incriminate them or subject them to a criminal penalty.[29] The method of service may also vary,[30] and the payment of witness fees may be specifically included.[31] The Commission may be permitted to apply to the court for enforcement of the subpoena through its own staff attorneys, rather than through the Attorney General.[32] Which of these items to include is obviously a policy choice.[33]

## Conclusion

The Commission may be given subpoena powers by Congress without casting any doubt on the propriety of the service of either Judge Kaufman, Senator Thurmond or Representative Rodino. We do not believe that the Department should seek contempt or immunity powers for the Commission. Whichever powers are sought, care should be taken that their use does not raise any suggestion that the Commission is targeting particular individuals. Courts have in various contexts been critical of the practice of parallel civil and criminal investigations because of their concern that information obtained in one context will be improperly used to aid an investigation.[34] As we understand it, the Commission's mandate is to survey the general nature of organized crime, not to uncover its members, and the prudential use of whichever powers are granted should protect against accusations that the Commission is being used as a stalking horse for the Department's own investigations.

RALPH W. TARR
*Deputy Assistant Attorney General*
*Office of Legal Counsel*

---

[27] Pub. L. No. 96–12, § 2(c), 93 Stat 26 (1979) (any court of the United States); 7 U.S.C § 2917 (any court of the United States within whose jurisdiction the investigation is being carried on); Pub. L. No. 94–106, § 816(d)(2), 89 Stat. 540 (1975) (any district court for any district in which the person is found, resides or does business).

[28] 42 U.S.C. § 1975a(k) (witness may not be forced to travel outside his State unless distance is 50 miles or less).

[29] Pub. L. No. 93–556, § 6(b)(3), 88 Stat. 1789 (1974).

[30] Mezines, *supra* note 4, at 20–51.

[31] 42 U.S.C. § 2201(c).

[32] 7 U.S.C. § 2917; 42 U.S.C. § 6299(a). The obvious disadvantage of Congress granting such permission is a loss of Department control over the Commission's activities, particularly in cases in which coordination is necessary to facilitate a criminal investigation or prosecution not involved with the Commission's area of inquiry.

[33] In addition to these items, Congress may also consider adding restraints similar to those placed on the Civil Rights Commission, which must, among other things, permit witnesses to present a written statement, be represented by counsel and to answer defamatory or degrading evidence. 42 U.S.C. § 1975a(c), (e), (h).

[34] *United States* v. *Sells Eng'g, 463 U.S. 418 (1983); United States* v. *LaSalle Nat'l Bank,* 437 U.S. 298 (1978).