# Proposed Commission on Deregulation of International Ocean Shipping

Individuals who serve on a purely advisory Commission on the Deregulation of International Ocean Shipping need not be officers of the United States. Appointment of Members of Congress to such a Commission does not implicate the Incompatibility Clause, U.S. Const. art. I, § 6, cl. 2. A provision authorizing the congressional leadership to make recommendations for appointments to the Commission does not limit the President's ultimate responsibility for such appointments.

The proposed Commission may not hold a witness in contempt for failure to comply with a Commission subpoena or to testify. Rather, the Commission should be required to seek a court order compelling compliance.

December 21, 1983

MEMORANDUM OPINION FOR THE ASSISTANT ATTORNEY GENERAL,
OFFICE OF LEGISLATIVE AFFAIRS

This responds to your request of December 5, 1983 for our comments on § 17 of S. 47, the Shipping Act of 1983. Section 17 would establish a Commission on the Deregulation of International Ocean Shipping (Commission). The Commission would be comprised of twenty-two members drawn from both the Executive and Legislative Branches and from the private sector. The Executive Branch would be represented by the President, the Secretary of State, the Attorney General, the Secretary of Transportation, the Chairman of the Federal Trade Commission, and the Chairman of the Federal Maritime Commission or their designees. Proposed § 17(a)(2)(A), (B). The Legislative Branch would be represented by eight Members of Congress, four from the House of Representatives and four from the Senate, chosen by the President from members of particular committees. *Id.* § 17(a)(2)(C), (D). The majority leader of the Senate and the Speaker of the House of Representatives would make recommendations on these appointments. The private sector would be represented by eight citizens chosen by the President. *Id.* § 17(a)(2)(E).

An examination of the bill indicates that the Commission's functions, *id.* § 17(c), are purely advisory: the Commission is to make a comprehensive study of particular issues involved in deregulation of ocean shipping and submit a report making recommendations to Congress and the President. *Id.* § 17(e). Thus, individuals who serve on this Commission will possess no enforcement authority or power to bind the Government and therefore need not

202

be officers of the United States. *Buckley* v. *Valeo,* 424 U.S. 1, 126, 141 (1976). Therefore, appointment of Members of Congress does not implicate the Incompatibility Clause of the Constitution. U.S. Const. art. I, § 6, cl. 2. We also read § 17(a)(4), pursuant to which the Senate Majority Leader and the Speaker of the House of Representatives make recommendations for appointments under § 17(a)(2)(C) & (D), as in no way limiting the President's ultimate responsibility for the selection of the members of the Commission. That ultimate responsibility must include the power to refuse to appoint any person recommended and to request the submission of another recommendation if a nominee appears unsuitable.

We must object, however, to § 17(d), which provides that failure of a witness to comply with a Commission subpoena or to testify when summoned will be punishable under 2 U.S.C. §§ 192– 194. These are the provisions applicable to contempt of Congress, and they provide for summary process. Whoever fails to comply with a request for information is "deemed guilty of a misdemeanor" and the matter is referred to the appropriate United States Attorney for prosecution. *Id.* §§ 192, 194. By contrast, under the numerous provisions for enforcement of Executive Branch agency and independent regulatory commission subpoenas, the agency or commission must apply, usually through the Attorney General, to a court for an order directing the subpoenaed individual to comply and it is the court order that an individual must comply with, not the agency request. The individual is punished for contempt of court, not contempt of the agency.

This distinction is rooted in both constitutional and policy concerns. In 1894, the Supreme Court stated that the Interstate Commerce Commission could not, consistent with due process, enforce its own subpoenas by being given the power to commit or fine people for disobedience:

> The inquiry whether a witness before the Commission is bound to answer a particular question propounded to him, or to produce books, papers, etc., in his possession and called for by that body, is one that cannot be committed to a subordinate administrative or executive tribunal for final determination. Such a body could not, under our system of government, and consistently with due process of law, be invested with authority to compel obedience to its orders by a judgment of fine or imprisonment. Except in the particular instances enumerated in the Constitution, and considered in *Anderson* v. *Dunn,* 6 Wheat. 204, and in *Kilbourn* v. *Thompson,* 103 U.S. 168, 190, of the exercise by either house of Congress of its right to punish disorderly behavior upon the part of its members, and to compel the attendance of witnesses, and the production of papers in election and impeachment cases, and in cases that may involve the existence of those bodies, the power to impose fine or imprisonment in order to compel the performance of a legal duty imposed by the United States, can only be exerted, under the law of the land, by a

203

> competent judicial tribunal having jurisdiction in the premises. *See Whitcomb's Case*, 120 Mass. 118, and authorities there cited.

*ICC* v. *Brimson*, 154 U.S. 447, 485 (1894). Since then, Congress has "never" conferred the power to enforce a subpoena on an issuing agency. L. Jaffe & N. Nathanson, *Administrative Law* 439 (1976). Thus, there has been no occasion for the Court to reexamine *Brimson*. Although there has been continuing debate over *Brimson's* analysis,[1] the fact remains that *Brimson* is the Supreme Court's last word on the subject, and in that case the Court distinguished Congress' contempt power as being rooted in the Constitution and historical precedent, and which the Court has recognized is subject to limits. *See, e.g., Marshall* v. *Gordon*, 243 U.S. 521 (1917). Although modern legal theory is less hostile to coercive agency action than when *Brimson* was decided, there is at the same time more sensitivity to arguments that due process requires that the prosecutor not also be the judge.[2] It is not clear to which branch of the government the Commission belongs. If Congress intends the Commission to be part of the Executive Branch, we are reluctant to approve the use of 2 U.S.C. §§ 192 and 194, and would urge rather that the power to enforce subpoenas be modeled on that traditionally given agencies. *See, e.g.,* 7 U.S.C. § 2717. This is especially true when there is no need to press for this extraordinary power. Other advisory commissions, charged with equally important tasks, have been able to rely on the courts to enforce their subpoenas. Likewise, federal agencies have functioned to Congress' satisfaction for decades without this power. If, on the other hand, the Commission is meant to be part of the Legislative Branch, similar to the Commission on Security and Cooperation in Europe, 22 U.S.C. § 3007(b), the bill should be amended to say so specifically.

LARRY L. SIMMS
*Deputy Assistant Attorney General*
*Office of Legal Counsel*

---

[1] *See* K. Davis, *Administrative Law Treatise* 214–15 (1958); Note, *Use of Contempt Power to Enforce Subpoenas and Orders of Administrative Agencies*, 71 Harv. L. Rev. 1541 (1958). *See also Federal Maritime Comm'n* v. *New York Terminal Conference*, 373 F.2d 424, 426 n.2 (2d Cir. 1967).

[2] *See, e.g., Ward* v. *Village of Monroeville*, 409 U.S. 57 (1972); *Morrissey* v. *Brewer*, 408 U.S. 471, 485–86 (1972).