Mr. Justice Johnson
 

 delivered the. opinion of the Court. Notwithstanding the range which has been taken by the plaintiff’s counsel, in the discussion of this cause, the merits of }t really lie in a very limited compass. The pleadings have narrowed them down to the simple inquiry, whether the House of Representatives can take cognisance of contempts com
 
 *225
 
 mitted against themselves, under any circumstances ? The duress complained of was sustained under a warrant issued to compel the party’s appearance, not for the actual infliction of punishment for an of-fence committed. Yet it cannot be denied, that the power to institute a prosecution must be dependent upon the power to punish. If the House of Representatives possessed no authority to punish for contempt, the initiating process issued in the assertion of that authority must have been illegal; there was a want of jurisdiction to justify it.
 

 It is certainly true, that there is no power given by the constitution to either House to punish for con-tempts, except when committed by their own members. Nor does the judicial or criminal power given to the United States, in any part, expressly extend to the infliction of punishment for contempt of either House, or any one co-ordinate branch of the government. Shall we, therefore, decide, that no such power exists ?
 

 It is true, that such a power, if it exists, must be derived from implication, and the genius and spirit of- our institutions are hostile to the exercise of implied pow.ejs. Had the faculties of man been competent to the framing of a system of government which would have left nothing to implication, it cannot be doubted, that the effort would have been made by the framers of the constitution. But what is the fact ? . There, is not in the whole of that admirable instrument, a grant of powers which does not draw after it others, not expressed, but vital to
 
 *226
 
 their exercise; not substantive and., independent, indeed, but auxiliary and subordinate*
 

 , The idea is utopian, that government can exist without leaving the'exercise of discretion somewhere. Public security against the abuse of such discretion must rest oh responsibility, and stated ap-péals to public approbation. Where all power is derived from the people, and public functionaries, at short intervals, déposite it at the feet of the people, to.be resumed again only at their will, individual fears may be alarmed by the monsters of imagination, but individual liberty can be m little danger.
 

 . . No one is so visionary as to dispute the assertion, that the’ sole end and aim of all our institutions is the safety and happiness of the citizen... But the relation between the action and the end, is not always so direct and palpable as to strike the eye: of every observer. The science of government is the most abstruse of all sciences ; if, indeed, that can be called a science which has but few fixed principles, and practically consists in littlé more than the exercise of a sound discretion, applied to the exigencies of the state as they arise. It is the science of experiment.
 

 But if there is one maxim which necessarily rides over all others, in the practical application of government, it is, that the public functionaries must be. left at liberty to exercise the powers which the people have intrusted to them. The interests and dignity of those who created them, require the exertion of the powers indispensable to the attainment of the ends of their creation. Nor is a casual conflict with
 
 *227
 
 the rights of particular individuals any reason to be urged against the exercise of such powers. The wretch beneath the gallows may repine, at the fate which awaits him, and yet it is no léss certain, that the laws under which he suffers were made for his security. The unreasonable murmurs of individuals against the restraints of society, have a direct tendency to produce that worst of all despotisms, which makes every individual the tyrant over his neigh-bour’s rights.
 

 That “ the safety of the people is the supreme law,” not only comports with, but is indispensable to, the exercise of those powers in their public functionaries, without which that safety cannot be guarded. On this principle it is, that Courts of justice are universally acknowledged to be vested, by their very creation, with power to impose silence, respect, and. decorum, in their presence, and submission to their lawful mandates, and, as a corollary to this proposition, to presérve themselves and their officers from the approach and insults of pollution.
 

 It is true, that the Courts of justice of theTJnited States are vested, by express statute provision, with power to fine and imprison for contempts; but it does not follow, from this circumstance, that they would not have exercised that power without the aid of the statute, or not, in cases, if such should occur, to which such statute provision may not extend ; on the contrary, it is a legislative assertion of this right, as incidental to a grant of judicial power, and can only be considered either as an instance of abundant caution, or a legislative declaration, that the power
 
 *228
 
 of punishing for contempt shall not extend beyond its known and acknowledged limits of fine and im-prisonnient. * •
 

 _ . , , , , But it is contended, that if this power in the House of Representatives is to be asserted on the plea of necessity, the ground is too broad, and the result too indefinite ; that the executive, and every co-ordinate, and even subordinate, branch of the government, may resort to the same justification, and the whole assume to themselves, in the exercise of this power, the most tyrannical licentiousness.
 

 This is unquestionably an evil to be guarded against, and if the doctrine may be pushed to that extent, it must be a bad doctrine, and is justly denounced.
 

 But what is the alternative ? The argument obviously leads to the total annihilation of the power of the House of Representatives to guard itself from contempts, and leaves it exposed to every indignity and interruption that rudeness, caprice, or even conspiracy, . may meditate against it. This result is fraught with too much absurdity not to bring into doubt the soundness of any argument from which it is derived. That a deliberate assembly, clothed with the majesty of the people, and charged with the care of all that is dear to them j composed of the most distinguished citizens, selected and drawn together from every -quarter of a great nation ; whose deliberations are required by public opinion to be conducted under the eye of the public, and whose decisions must be clothed with all that sanctity which
 
 *229
 
 unlimited confidence in their wisdom and purity can inspire; that such an assembly should not possess the power to suppress rudeness, or repel insult, is a supposition too wild to be suggested. And, accordingly, to avoid the pressure of these considerations, it has been argued, that the right of the respective Houses to exclude from their presence, and their absolute control within their own walls, carry with them the right to punish contempts committed in their presence ; while the absolute legislative power given to Congress within this District, enables them to provide by law against all other insults against which there is any necessity for providing.
 

 It is to.be observed, that so far as the issue of this cause is implicated, this argument yields all right of the plaintiff in error to a decision in his favour; for,
 
 non
 
 constat, from the pleadings, but that this warrant issued for an offence committed in the immediate presence of the House.
 

 Nor is it immaterial to notice what difficulties the negation of this right in the House of Representatives draws after it, when it is considered, that the concession of the power, if exercised within their walls, relinquishes the great grounds of the . argument, to wit: the want of an express grant, and the unrestricted and undefined nature of the power here set up. For why should the House be at liberty to exercise an ungranted, an unlimited, and undefined power within their walls, any more than without them
 
 ?
 
 If the analogy with individual right and power be resorted to, it will reach no farther than to exclusion, and it requires no exuberance of imagina
 
 *230
 
 tion to exhibit the ridiculous consequences which might result from such a restriction, imposed upon the conduct of a deliberative assembly.
 

 Nor would their situation be materially relieved by resorting to their legislative power within the District. That power may, indeed, be applied to many purposes, and was intended by the constitution to extend to many purposes indispensable to the security and dignity of the general government; but they are purposes of a more grave and general character than the offences which may be denominated contempts, and which, from their very nature, admit of no precise definition. Judicial gravity will not admit of the illustrations which this remark would admit of. Its correctness is easily tested by pursuing, in imagination, a legislative attempt at defining the cases to which the epithet
 
 contempt
 
 might be reasonably applied.
 

 But although the
 
 offence
 
 be held undefinable, it is justly contended, that the
 
 punishment
 
 need not be indefinite. Nor is it so.
 

 We are not now considering the extent to which the punishing power of Congress, by a legislative act, may be carried, On that subject, the bounds of their power are to be found in the provisions of the constitution.
 

 The present question is, what is the extent of the punishing power which the deliberative assemblies of the Union may assume and exercise on
 
 thh
 
 principle of self-preservation ?
 

 Analogy, and the nature of the case, furnish the
 
 *231
 
 answer-?-“¿Ae
 
 least possible power adequate to the end proposed;”
 
 which is the power of imprisonment. It may, at first view, and from the history of the practice of our legislative bodies, be thought to extend to other inflictions. But every other will be found to be mere commutation for confinement; since commitment alone is the alternative where the individual proves contumacious. And even to the
 
 duration
 
 of imprisonment a period is imposed by the nature of things, since the existence of the power that imprisons is indispensable to its continuance; and although the legislative power continues perpetual, the legislative body ceases to exist on the moment of its adjournment or periodical dissolution. It follows, that imprisonment must terminate with that adjournment.
 

 This view of the subject necessarily sets bounds to the exercise of a caprice which has sometimes disgraced' deliberative assemblies, when under the influence of strong passions or wicked leaders, but the instances of . which have long since remained on record only as historical facts, not as precedents for imitation. In the present fixed and settled state of English institutions, there is no more danger of their being revived, probably, than in our own.
 

 But the American legislative bodies have never possessed, or pretended to the omnipotence which constitutes the leading feature in the legislative assembly of Great Britain, and which may have led occasionally to the exercise of caprice, under the specious appearance of merited resentment.
 

 
 *232
 
 If it be inquired, what security is there, that with an officer avowing himself devoted to their will, the House of Representatives will confine its punishing power to the limits of imprisonment, and not push it to the infliction of corporal punishment, pr even death, and exercise it in cases affecting the liberty of speech and of the press ? the reply is to be found in the consideration, that the constitution was formed in and for an advanced state of society, and rests at every point on received opinions and fixed ideas. It is not a new creation, but a combination of existing materials, whose properties and attributes were familiarly understood, and had been determined by reite rated experiments. It is not, therefore, reasoning upon things as they are, to suppose that any deliberative assembly, constituted under it, would ever assert any other rights and powers than those which had been established by long practice, and conceded by public opinion. Melancholy, also, would be that state of. distrust which rests not a hope upon a moral influence. The most absolute tyranny could not subsist where men could not be trusted with power because they might abuse it, much less a govern- • ment- which has no other basis than the sound morals, moderation, and good sense of those who compose it. Unreasonable jealousies not only blight the pleasures, but dissolve the very texture of society.
 

 But it is argued, that the inference, if any, arising under the constitution, is against the exercise of the powers here asserted by the House of Representatives ; that the express grant of power to punish their
 
 *233
 
 members respectively, and to expel them, by the application of a familiar maxim, raises an implication
 
 r
 
 . .i.■against the power to punish any other than their ■ own members.
 

 This argument proves too much 5 for its direct application would lead to the annihilation of almost every power of Congress. To enforce its laws upon any subject, without the sanction of punishment is obviously impossible. Yet there is an express grant of power to punish in one class of cases and one only, and all the punishing power exercised by Congress in any cases, except those which relate to piracy and offences against the laws of nations, is derived from implication. Nor did the idea ever occur to any one, that the express grant in one class of cases repelled the assumption of the punishing power in any other.
 

 The truth is, that the exercise of the powers given over their own members, was of such a: delicate nature, that a constitutional provision became necessary to assert or commuuicate it. Constituted, as that body is, of the delegates of confederated States, some such provision was necessary to guard against their mutual jealousy, since every proceeding against a representative would indirectly affect the honour or interests of the state which sent him.
 

 In reply to the suggestion that, on this same foundation of necessity, might be raised a superstructure of implied powers in the executive, and every ,other department, and even ministerial officer of the government, it would be sufficient to observe, that neither analogy nor precedent would support the asser-
 
 *234
 
 tionof such-powers in any other than a . legislative or-judicial body. Even corruption any where else would not contaminate the source of political life’. In the retirement of the cabinet, it is not expected that the executive can be approached by indignity or insult; nor can it ever be necessary to the executive, or any other department, to hold a public deliberative assembly. These are not arguments; they are visions which mar the enjoyment of actual blessings, with the attack or feint of the harpies of imagination.
 

 As to the minor points made in this' case;, it is only necessary to observe; that there is nothing on the face of this record from which it can appear on what evidence this warrant was issued. And we are not to presume that the House of Representatives would have issued it without duly establishing the fact charged on the individual. And, as to the distance to which the process might reach, it is very clear
 
 that there exists no reason for
 
 confining its operation to the limits of the District of Columbia ; after passing those limits, we know no bounds that can be prescribed to its range but those of the United States. And why should it be restricted to other boundaries ? Such are the limits of the legislating powers of -that body; and the inhabitant of Louisiana or Maine may as probably charge them with bribery and corruption, or attempt, by letter, to indiice the commission of either, as the inhabitant of any other section of the Union. If the inconvenience be urged, the reply is obvious: there is no difficulty in observing
 
 *235
 
 that respectful deportment which will render all apprehension chimerical.
 

 Judgment affirmed.