## KIRKPATRICK *vs.* CHESNUT.

Testator declared as follows: "I direct that my executrix and executors shall require of each of my sons, as they become entitled to their respective portions of my estate under this will, to bear his proportion in the gift of two thousand dollars, which shall be given to each of my daughters, in lieu of the lands which were bequeathed to the sons, in bond or otherwise, at the discretion of my executors:" *Held*, That the pecuniary legacies to the daughters were not charged upon the lands demised to the sons.

Before lands devised will be charged with pecuniary legacies, an intention to charge them must clearly appear, either by the direct terms of the will, or by an implication too plain to be mistaken.

BEFORE CARPENTER, J., AT CAMDEN, APRIL TERM, 1873.

This was a proceeding for settlement of the insolvent estate of John Chesnut, deceased. It was commenced by a petition filed by James D. Kirkpatrick, as administrator of the decedent, praying for a sale of the real estate for payment of debts. James Chesnut, L. L. Whittaker, as administrator of Ellen Chesnut, deceased, and others, were made parties defendant.

The case, so far as it relates to the questions considered by this Court, is stated in the opinion of the Court.

Both sides appealed from the decree of the Circuit Court.

*Shannon*, for petitioner.

*Workman & Davis*, for defendants.

April 23, 1874. The opinion of the Court was delivered by

MOSES. C. J. The late Col. John Chesnut, by his last will, disposing of a large real and personal property, devised (with the exception of a life estate to his wife of a town and country residence), all the real estate of which he died seized, to his two sons, James Chesnut and John Chesnut, and provided for the purchase, by his executors, of lands for his son, Thomas W. Chesnut, of equal value with that which he had devised to either of the other sons. His personal property he bequeathed to his wife and children, which last, also, included three daughters. The time when the devises and bequests were to vest in possession is fixed by the terms of the will, but it no wise bears on the question before the Court.

The contest in the case arises out of the following clause of the will : " I direct that my executrix and executors shall require of each of my sons, as they become entitled to their respective portions of my estate under this will, to bear his proportion in the gift of two thousand dollars, which shall be given to each of my daughters, in lieu of the lands which were bequeathed to the sons, in bond or otherwise, at the discretion of my executors." It appears that the two sons, James and Thomas W., paid, respectively, to two of the sisters, two thousand dollars, as required by the said clause. It is contended on behalf of the distributees of the sister Ellen W., who departed this life in December, 1862, that the devise to their brother John is charged by the said section of the will, with a lien in his favor, for the payment of the $2,000 directed by him to be

made. This is resisted by the administrator and creditors of John, who claim that such a charge never existed, and that, even if it had, it was satisfied and discharged by a compliance by the said John with all its requisitions.

This is not a devise for the payment of debts, which only vests in the devisee a title for the mere purpose of fulfilling the trust which it creates. It is, however, claimed to be a devise, charged with the payment of a legacy, and so connected with, and attaching to, the subject of it, as to bind it by a specific lien, until discharged by full satisfaction.

The cases in which the question so often arises as to the fund out of which the debts of the testator are to be paid, and how far pecuniary legacies may be chargeable upon real estate, have no decisive bearing on the question here. They are of use, however, as discussing and presenting the general principles which, to some extent, are involved in the matter now before us. These lead to the conclusion that the intention to charge real estate with the payment of pecuniary legacies, or to impose upon a devise a condition that it is to be subject to such a legacy to another, must be clearly disclosed by the will, or attested from it, by inference or implication too plain to be mistaken.

It is not pretended that the testator intended "the gift" of the $2,000 to the daughters to be paid by his executors out of his estate, or that the liability for it did not personally attach on each of the sons. If it did not operate as a charge on the property devised and bequeathed to them, it was at least a personal obligation, which they could not avoid without relinquishing the benefits of the will. Whether it was more than a mere personal obligation remains to be considered.

It is not necessary to refer to authority to show that a devise of real estate to one may be bound by a charge for the payment of a pecuniary legacy to another. But the intention must appear from the will—there must be something to denote that such was the design and purpose of the testator. To annex conditions to a devise in fee is to subject it to restrictions which not only affect its value but qualify its free enjoyment.

Where the words make the devise an absolute fee simple, an intention to charge it with a debt must appear from the will.

Judge Harper, in *Warley* vs. *Warley*, Bail. Eq., 409, says " every devise of land is specific. Where a testator gives property specifically, of course he does not intend that it shall pay debts."

To render it thus liable he must so declare by his will, either in express words, or such intention must be inferred from its whole tenor. "Real estate is never to be charged with the payment of legacies, unless the intention of the testator so to charge it is either expressly declared or fairly and satisfactorily to be inferred from the language of the will."—See note, 2 Jar. on Wills., 262. Mr. Story, in delivering the opinion of the Court in *Wright* vs. *Dunn*, 6 Wheat., 229, says, "there is no doubt that a charge on lands may be raised by implication, as well as by an express clause in a will, but then the implication must be clear from the words."

"Doubtful words in a will will never so operate."—*Seaver* vs. *Lewis and Wife*, 14 Mass., 87. Can this intention be inferred from the will in question?

The immediate clause from which the charge is supposed to arise directs the executors to require each of the sons—as they become entitled to their respective estates under the will—to bear his proportion in the gift of $2,000, which shall be given to each of the daughters, in lieu of the lands which were bequeathed to the sons, in bond, or otherwise, at the discretion of the executors.

It established a debt against the sons, and required the executors to see that it was received. As the large bequests of slaves and other personalty to the sons were subject to the assent of the executors, they had in their own hands the means of executing the direction of the testator, and could readily have enforced the requisition which the will imposed upon them. The testator had provided a large fund, which supplied the sons with the ready means of meeting the comparatively small sums they were to pay the sisters.

The clause looks rather to a personal obligation than the creation of a lien or charge, for the contribution was receivable "in bond, or otherwise, at the discretion of the executors."

Having devised no land to his daughters, his object was to compensate them by a further gift, and his declaration that it was in lieu of the land given to the sons only disclosed the motive which prompted it. The whole context of the will indicates that the several devises and bequests to the sons were to vest absolutely, free from all liens or incumbrances.

In *Roseborough* vs. *Rutland*, (2 S. C., 378), Mr. Justice Willard well says: "The legacy is not in terms charged upon the lands devised. To make out an intention to charge it by construction, the first step is to shew the existence of a motive which can be pre-

sumed to have influenced the mind of the testator." Can such a motive be discerned here? He had provided large resources for the sons, out of which it was in the power of the executors to secure the payment to the daughters, "in bond, or otherwise," and the testator, having regard to the surrounding circumstances, could not have considered that there would be any probable loss, unless the amount was secured by a charge on the property given to the sons.

Was the claim of Ellen W., the daughter, on her brother John, for his contribution to the $2,000, ever satisfied? The Referee holds that it was, while the Circuit Judge sustained the exception to his conclusion. We are disposed to concur with the Court, for we see nothing in the testimony from which payment can be inferred.

We do not hold ourselves bound, on a question of fact, to present at length the reasons which affect our judgment. It is enough to say that the *onus* was on the administrator of John Chesnut to show payment. No discharge or receipt was produced, and no parol testimony of any adjustment was offered. The prudence and care of the acting executor, in the management of the estate and the regularity of all the papers produced in relation to his settlement with the devisees and legatees, in the absence of any memorandum in respect to the claim, rather tend to the belief that no payment had been made. The death of Ellen, in 1862, having attained her majority but a few months before the late war, which caused much interruption in all kinds of business, is a circumstance adding weight to the conclusion of the Circuit Judge. But the positive declaration of John himself, in December, 1866, received in evidence without objection, that he had never paid the said sum of money, seems to leave no ground for any mere inference to the contrary.

The motions are dismissed, and the case remanded to the Circuit Court for such further orders as may be necessary.

*Wright,* A. J., and *Willard,* A. J., concurred.