Davis, J.
This case fairly involves an issue as to the legal existence of the select investigating committee which was appointed by a resolution of the Senate. The auditor of state is made the chief accounting officer of the state and no money can lawfully be drawn out of the treasury except upon *43 his warrant; and it is required that “he shall not draw any warrant on the treasurer for any claim unless he finds the same legal, and that there is money in the treasury which has been duly appropriated to pay the same” (Revised Statutes, Sections 153, 154). The only appropriation for such purpose which is available at present, is an appropriation for “contingent fund of the Senate for the use of select investigating committees” (98 O. L., 42). This is not an appropriation specifically for this committee; but it is clearly an appropriation for the contingent fund of the Senate for the use of any select investigating committee or committees. Presumably it is appropriated’ for the use of any select investigating committee which has been legally constituted for a legal purpose. The auditor of state declines to issue his warrant for the payment of expenses of this committee, claiming that the Senate exceeded its constitutional powers in appointing the committee. ^
The broad claim is made for the relator that the right to gather information in its own way, for the .purposes of legislation, inheres in the Senate as a legislative body; and that it is “a right fundamental to legislation and not denied by the Constitution.” But whatever inherent power the General Assembly in its entirety may possess by virtue of its being the repository of the whole legislative power of the state, we do not think that it follows as a conclusion that one of its constituent parts must likewise possess the same inherent powers. It may be conceded that either branch of the General Assembly has all such powers as are necessarily implied in the express grant of powers to it by the Constitution; *44 but under the system of distribution of powers in the American Constitutions, and especially under the Constitution of Ohio, which is explicit in excluding from the legislative department the exercise of any power which is not delegated in the Constitution (Article I, Section 20), the authority of a single branch of the Legislature to act separately must be found in express terms or by necessary implication in the Constitution.
" It is clear that “the legislative power,” whatever may be the extent of that power which is conferred upon the General Assembly, is not expressly delegated to a part of the General Assembly. Nor is it inrpliedly so delegated. The Constitution explicitly grants and defines the separate powers of each branch of the General Assemblyand all powers which are not delegated to each house are expressly reserved to the people. The powers of each house are not general and subject only to limitation in the'' Constitution, as is the legislative power of the entire General Assembly; but they are specific or enumerated powers. As to these, the provisions of the Constitution are grants of power limited by the reservations of Article I, Section 20. We therefore must look to the enumerated powers alone to determine this question; and it were just as sane to claim that either branch of the Legislature might, by itself, enact a law, as to claim that by “inherent power” it could independently exercise any legislative power outside of those specifically delegated in the Constitution.
Precedents and usages drawn from English parliamentary practice can not safely guide us; because, as has been often pointed out, the Par *45 liament was originally a high court of judicature and both houses thereof still retain many of their ancient judicial functions; and Parliament is in no manner restrained by the limitations of a written Constitution. Nor should the remarks or rulings of courts in cases where the questions now under discussion were not distinctly in issue and carefully considered, be followed without caution, and especially so where the constitutional and statutory provisions vary from those of this state. We may say, however, that the doctrine of inherent powers, as laid down in Anderson v. Dunn, 6 Wheat., 204, and followed many times in this country, has been very much weakened if not entirely overturned by the principles established in Kilbourn v. Thompson, 103 U. S. Reports, 168.
The latter case, in a remarkable opinion by Mr. Justice Miller, established the following propositions from which the judgment in that case was reached: 1. The powers of either house of Congress must be found in some express grant in the Constitution, or be such as are necessary to carry into effect such powers as are expressly granted. 2. That the theory of inherent powers announced in Anderson v. Dunn, supra, is unsound and should be rejected, and 3. “that the resolution of the House of Representatives authorizing the investigation was in excess of the power conferred on that body by the Constitution.” That such is the effect of Kilbourn v. Thompson, was recognized by this court in Ex parte Dalton, 44 Ohio St., 142, in the opinion by Owen, C. J., at page 151. It is true that all of these cases involved the question of the power of a legislative body to punish for contempt, and it *46 is also true that the Supreme Court of the United States in Kilbourn v. Thompson expressly declined to pass upon the existence or non-existence of a power in either house of Congress in aid of legislation, because it was not necessary to a decision of the case; but it nevertheless remains true as the doctrine of that case that any power claimed by Congress, or either branch of it, must be found in the Constitution or necessarily implied from it. The same principle must apply to the General Assembly of Ohio and its constituent branches, because all powers not delegated in the Constitution of Ohio, remain with the people. Article I, Section 20.
Therefore, looking into the Constitution for the authority claimed here, what do we find? The whole legislative power of the state, whatever that may include, is vested in the General Assembly,, consisting of the Senate and House of Representatives (Article II, Section 1); and it is provided that the General Assembly shall not exercise any judicial power which is not expressly conferred in the Constitution (Article II, Section 32). Assuming that the power which is claimed here is conferred by these sections of the Constitution upon the General Assembly as a whole, does it follow that the same power is conferred upon each of its constituent parts? Certainly not. A substantive legislative act, that is, one which is not merely a matter of procedure, must be performed by the General Assembly and not by some of its constituent parts. For that reason the Constitution proceeds to define the powers of each branch of the General Assembly. These provisions need not be quoted here. They are found in Article *47 II, Sections 6, 7, 8, 9, 14, 15, 17 and 23. Here, and here only, are found the powers granted to the Senate or House acting separately. The power of seeking information for general legislative purposes is not found here, and it is not implied unless it be necessary to the proper exercise of the special jurisdiction which is expressly granted to either branch of the General Assembly, as, for example, the judging of the election, returns and qualifications of its own members, the expulsion of a member, etc.
But in Section 8 of Article II, we have, as we construe it, a positive negation of the powers which are claimed for a single branch of the General Assembly in this case. That section is as follows: “Each house, except as otherwise provided in this Constitution, shall choose its own officers, may determine its own rules of proceeding, punish its members for disorderly conduct; and, with the concurrence of two-thirds, expel a member, but not the second time for the same cause; and shall have all other powers, necessary to provide for its own safety, and the undisturbed transaction of its business.” The last clause of this section restricts the phrase “all other powers” to such powers as are necessary to secure the safety of each house and the peaceable transaction of its business, thereby excluding from the grant all powers which are not included in the class named. The familiar maxim of interpretation, Expressio unius est exclusio alterius, applies here; for logically the express grant of certain powers and silence as to others is necessarily a withholding of those not named. It seems to us that this construction of Section 8 of Article II, of the *48 present Constitution, is very much strengthened by the variance which is disclosed by. comparison with Section 11 of Article I, of the Constitution of 1802. The last-named section is substantially the same as the one now in force, except in the last clause which is as follows: “and shall have all other powers necessary for a branch of the Legislature of a free and independent state.”
It is certain that if the doctrine of inherent powers of legislative bodies ever had any existence under a constitutional government it was recognized and granted in this broad language of our former Constitution, and that it was not included in the grants of the present Constitution; but without attempting to define the extent of powers conferred by this clause of the Constitution of 1802, it is obvious to the most casual reader that it is much broader than the grant of power in the present Constitution. It is inconceivable that a convention called “to revise, amend or change the Constitution of this state” should not have noticed the difference in the language of the two Constitutions and should not have appreciated the significance of the change. The conclusion would, therefore, seem to be irresistible that the framers of the Constitution designedly narrowed the grant of powers to each house of the General Assembly to those which are expressly mentioned.
But it is said that even, if it be so that a single branch of the General Assembly could not by itself constitutionally appoint an investigating committee for purposes such as proposed here, it is nevertheless authorized to do so by an act of the whole General Assembly and that this com *49 mittee was expressly appointed by the Senate under and by virtue of Sections 50 to 55, inclusive, of the Revised Statutes of Ohio. If a single branch of the General Assembly has nó constitutional power to appoint this committee, it must be obvious that the whole Legislature can not authorize it to do so. The Constitution is above the Legislature, and the legislative power which may be delegated to the General Assembly can not be redelegated to some other body.
We do not, however, accept the construction of the statute which is contended for by the relator. The Sections 50 to 55, inclusive, of the Revised Statutes, may be found as originally enacted March 30, 1872, in 69 O. L., 61,’where the act is entitled “An act to authorize committees of the General Assembly to compel the attendance of witnesses, and for other purposes.” From the title of the act and from its purview, it is apparent that the thought of authorizing the appointment of standing-'or select committees by the General Assembly itself or by a single branch thereof was not in the mind of the Legislature; but that, assuming them to have been already appointed (and nobody ever questioned the right of either branch of the General Assembly to appoint such committees in regard to matters over which such house has express authority in the Constitution) the General Assembly proceeds to provide for their greater efficiency in the discharge of their functions, by providing a mode and authority for' compelling the' attendance of witnesses, the punishment for contempt, etc. We are entirely unable to see how the construction of these sections of the Revised Statutes as contended for by the re *50 lator can be fairly put upon them; and if they could be so construed, then, entertaining the views which we have already expressed as to the constitutional powers of a single branch of the General Assembly, we would feel compelled to declare this legislation to be unconstitutional. We prefer a construction which would allow the statute to stand with the Constitution, by applying it only to matters or procedure by committees which have been otherwise duly and constitutionally appointed.
It was suggested in argument that the appropriation (98 O. L., 42) by the concurrent action of both houses of the General Assembly is a ratification of the Senate resolution. It is perhaps a sufficient answer to this to recall once more the indefinite character of the appropriation. It is not a definite appropriation for the use of the committee appointed by the Senate resolution, but for the use of “committees.” Nor can it be. said that the making of an appropriation to the Senate contingent fund for a stated purpose is in the nature of a bill authorizing the committee; because it does not profess to authorize the committee or ratify the resolution of the Senate and because the resolution being void under the Constitution it could not be ratified.
In behalf of the respondent it has been argued with much force and keen analysis that upon the face of the Senate resolution the scope and purpose of the inquiry is an exercise of judicial power, which is expressly forbidden by Article II, Section 32, of the Constitution, and therefore that it is beyond the power of the General Assembly. *51 It is not necessary to decide this question in this case and therefore we do not pass upon it.
People, ex rel., v. Keeler, 99 N. Y., 463, has been vigorously pressed upon our attention, by counsel for the relator, as decisive of this case; but we do not regard it as controlling or even persuasive, for several reasons, the chief of which are: First, that the Constitution of the state of New York contains no such distinct distribution of powers as is found in the Constitution of this state; and, second, that the court in that case expressly held that certain powers in their nature judicial belong to the Legislature of the state of New York, and that therefore a statute is not necessarily void which involves action on the part of either house which is in its nature judicial. Such a decision could not have been made under the provisions of the Constitution of Ohio to which we have referred, especially Article II, Section 32.
The demurrer to the petition is sustained and the

Petition dismissed.

Shauck, C. J., Price and Summers, JJ.,~ concur. Crew and Spear, JJ., dissent.