**NETTIS ENVIRONMENTAL LTD., Plaintiff,**

v.

**IWI, INC., et al., Defendants.**

**No. 1:98 CV 2549.**

United States District Court, N.D. Ohio, Eastern Division.

April 14, 1999.

Robert J. Rotatori, Sr., Richard L. Stoper, Jr., Gold, Rotatori, Schwartz & Gibbons, Cleveland, OH, for plaintiff.

Jonathan L. Stark, James D. Vail, Schneider, Smeltz, Ranney & LaFond, Cleveland, OH, for defendants.

### MEMORANDUM OF OPINION AND ORDER

WELLS, District Judge.

This case is before the Court on Plaintiff's 22 January 1999 Motion for Order Requiring Defendant IWI, Inc. To Show Cause Why It Should Not Be Held In Contempt For Violation of Court Orders. A hearing was held 10 March 1999 to provide defendant IWI, Inc. ("IWI") an opportunity to show cause why it should not be held in contempt of court. Robert

and Jeffrey Iacco were present as party representatives of IWI.[1] For IWI to be in civil contempt due to violation of a court order, clear and convincing evidence must show IWI violated a definite and specific court order. *See Grace v. Center for Auto Safety,* 72 F.3d 1236, 1241 (6th Cir.1996).

## I. Facts

The facts which follow have been proven by clear and convincing evidence. Plaintiff Nettis is a corporation which "provides engineering, sales and service in connection with in-plant ventilation problems." Verified Complaint ¶ 2. Defendant IWI is a corporation which "provides products and services related to plant ventilation and is a competitor of Nettis." *See* Verified Complaint ¶ 3; Answer of IWI, Inc. ¶ 3. IWI has admitted it placed terms such as "Nettis Environmental," "Nettis," and "DR Nettis" (collectively referred to as the "offending terms") in hidden text on its own website. *See* Verified Complaint ¶¶ 1, 22, 25; Joint Statement of Uncontested Facts ¶¶ 3–4. Nettis asserts this conduct violates 15 U.S.C. § 1125 as well as several provisions of state law.

In addition to placing the Nettis name in hidden text on its website, IWI also attempted to "register" its website with 500 search engines or websites, and was successful at registering with about 380 of them.[2] As part of this registration, IWI provided the following keywords as being associated with IWI's website: "Nettis NETTIS ENVIRONMENTAL DR Nettis NETTIS nettis environmental nettis." *See* Joint Statement of Uncontested Facts ¶ 5. Thus, users searching for these Nettis keywords via search engines or websites with which IWI registered its website, would be led to IWI's website. These registrations occurred on 21 October 1998, before this lawsuit began. Until January 1999, Nettis was not aware of these.

On the same day the complaint was filed, by the agreement of counsel for Nettis and IWI, IWI was ordered "[f]or the immediate present ... to purge its webpage of all materials which could cause a web search engine looking for 'Nettis Environmental', 'Nettis', or similar phrases to pull up IWI's webpage." *See* Order of 6 November 1998. IWI contacted its computer consultant Kevin Rochford, who is

1. Nettis requested Robert and Jeffrey Iacco be incarcerated, both as a penalty for criminal contempt of court and as a coercive measure to remedy civil contempt of court. In the 1 March 1999 Order scheduling the show cause hearing, the Court found the filed documents did not justify the imposition of criminal sanctions.

2. In the Joint Statement of Uncontested Facts ¶ 5, the parties stipulate "Exhibit H to Plaintiff's Motion is a Web Page Registration Report which reflects the successful registration by Jeffrey Iacco on October 21, 1998 of [IWI's website] ... with *386* search engines or websites" (emphasis added). However, Exhibit H mentions only 380 successful registrations, so that figure will be used here.

The key here, however, is that IWI used two separate methods to promote the association of its website with Nettis' name. IWI placed various forms of the Nettis name in hidden text located on its website. These pieces of hidden text, known as "metatags," are automatically read by "crawling" programs employed by so-called "search engines." A search engine is a special kind of website containing a database of other known websites, associating certain keywords with each website. The user provides the search engine with terms of interest to the user, and the search engine responds with a list of websites on its database associated with the terms submitted by the user. A search engine's crawling program automatically searches websites to update the search engine's database of keywords associated with each website. As a result, keywords may be added to or subtracted from the search engine's database as appropriate.

However, a website owner need not rely on the crawling programs to get the attention of a search engine. The website owner may contact the search engine administrator herself or himself, via electronic mail or other means of communication, and provide a list of keywords associated with the website.

Either way, the addition of a website to a search engine's database benefits the owners of both the search engine and the website. The search engine becomes more comprehensive in scope, and the website becomes more accessible to potential users.

named as a defendant in this lawsuit, and instructed him to remove the offending terms from IWI's website. By Sunday, 8 November 1998, Mr. Rochford had rewritten or removed the appropriate computer code so that the offending terms could be cleansed from IWI's website. However, IWI's internet service provider Digiweb, Inc.[3] refused to upload the changes onto its server at that time, allegedly due to this lawsuit. Digiweb subsequently allowed the changes to be uploaded Tuesday, 10 November 1998.

Meanwhile, on Monday, 9 November 1998, a stipulated Temporary Restraining Order had been submitted by the parties and entered by the Court. The parties later submitted a stipulated Preliminary Injunction, which was ordered into effect 8 December 1998. In identical terms, both orders enjoin IWI, "its officers, agents, servants, employees, parents, subsidiaries and related companies having notice of this Order" from:

    a.  using in any manner the names "Nettis Environmental Ltd.," "Nettis Environmental" and "Nettis" or any derivative of the name "Nettis" on Defendant's Website, in buried code or metatags on its home page or Web pages, or in connection with the advertising or promotion of its goods, services or websites; [and]

    b.  using in any manner the names "Nettis Environmental Ltd.," "Nettis Environmental" or "Nettis" in connection with the Defendant's goods or services in such a manner that is likely to create the erroneous belief that said goods or services are authorized by, sponsored by, licensed by or are in some way associated with Nettis Environmental Ltd.

Temporary Restraining Order ¶ 1; Preliminary Injunction ¶ 1. Both orders also state: "Defendant [IWI] shall immediately cease using the names 'Nettis Environ-

mental Ltd.,' 'Nettis' and 'Nettis Environmental' on the Internet." Temporary Restraining Order ¶ 3; Preliminary Injunction ¶ 3.

Around the time IWI successfully purged its website of the offending terms, Mr. Rochford advised IWI that no further action needed to be taken to "de-register" IWI's website as being associated with the Nettis name. Mr. Rochford relied on the search engines' automatic updating process. *See* IWI's Brief In Opposition to Plaintiff's Motion, Exhibit C (Affidavit of Kevin Rochford) ¶¶ 9–11. Mr. Rochford informed IWI that, within a few days of the successful removal of the offending terms from IWI's website, "crawling" programs would discover the offending terms had been removed and then appropriately update the respective search engines' databases.

Mr. Rochford was wrong. Nettis learned of the October 1998 registrations through discovery documents produced in January 1999, two months after the Temporary Restraining Order was entered and one month after the Preliminary Injunction was entered. On 20 January 1999 Nettis determined at least six search engines still retrieved IWI's website in response to queries for "nettis" or "nettis environmental." *See* Joint Statement of Uncontested Facts ¶ 6.

IWI first learned of these problems on 25 January 1999 when served with Nettis' motion requesting IWI be held in contempt. The next day IWI removed its website from the internet. As a result, even if a search engine did indicate the IWI website as associated with the Nettis name, the IWI website could itself not be accessed. IWI also sent an electronic mail message to the 380 search engines with which IWI had registered its website in October 1998, asking them to "de-register"

---

3. Digiweb was named as a defendant in the complaint, but Nettis' claims against Digiweb were dismissed as the result of an agreed

Order, Judgment and Permanent Injunction entered 12 January 1999.

IWI's website so it would no longer be associated with the Nettis name.

The parties agree that, by 8 February 1999, three of six search engines known not to have been updated in January, no longer retrieved IWI's website in response to queries containing the Nettis name. On 16 February 1999 only two search engines were found still to retrieve the IWI website when queried with a Nettis term. On 23 February 1999, none of these six search engines retrieved IWI's website as associated with the Nettis name. *See* Joint Statement of Uncontested Facts ¶¶ 6–9. However, on 9 March 1999, the day before the contempt hearing, two more search engines were found to retrieve the IWI website in response to queries for the Nettis name. One of these was the heavily-used AltaVista search engine.[4]

## II. Contempt Analysis

■ To justify a finding of civil contempt, the complainant must prove that a definite and specific court order has been violated. *See Grace,* 72 F.3d at 1241. In this case, the parties themselves drafted the terms of the Temporary Restraining Order and the Preliminary Injunction, both of which the Court ordered into effect. The orders are straightforward.

■ The test for determining when an order has been violated is not a subjective good faith standard, *see Glover v. Johnson,* 138 F.3d 229, 244 (6th Cir.1998), but rather an objective standard which asks whether the alleged contemnor has "failed to take 'all reasonable steps within [its] power to comply with the court's order.' " *Harrison v. Metropolitan Gov't of Nashville & Davidson County, Tenn.,* 80 F.3d 1107, 1112 (6th Cir.), *cert. denied,* 519 U.S. 863, 117 S.Ct. 169, 136 L.Ed.2d 111 (1996). There is no requirement of willfulness to establish civil contempt, and "the intent of a party to disobey a court order is 'irrelevant to the validity of [a] contempt

finding.' " *Rolex Watch U.S.A.,* 74 F.3d at 720 (quoting *In re Jaques,* 761 F.2d 302, 306 (6th Cir.1985)).

### A. IWI's Failure to Cleanse its Website of the Offending Terms Until 10 November 1998

■ Should IWI be held in contempt of court for not cleansing its website of the offending terms until 10 November 1998? IWI was ordered on 6 November 1998 "[f]or the immediate present ... to purge its webpage of all materials which could cause a web search engine looking for 'Nettis Environmental', 'Nettis', or similar phrases to pull up IWI's webpage." Order of 6 November 1998.

On 9 November 1998, IWI was enjoined from "using in any manner the names 'Nettis Environmental Ltd.,' 'Nettis Environmental' and 'Nettis' or any derivative of the name 'Nettis' on Defendant's Website, *in buried code or metatags on its home page or Web pages,* or in connection with the advertising or promotion of its goods, services or websites." Temporary Restraining Order ¶ 1 (emphasis added).

IWI learned of this lawsuit on the day it was filed and voluntarily agreed to an order to purge its website. It also immediately contacted its computer consultant to get the offending terms removed, but the consultant was unable to work on the project until Sunday, 8 November 1998. The consultant did what he could to cause the changes to be made, but Digiweb refused to permit him to upload these changes onto Digiweb's server until 10 November 1998. No evidence has been presented to suggest this process did not completely cleanse IWI's website of the offending terms. These actions constitute all reasonable steps to comply with the court orders requiring the cleansing of the offending terms from IWI's website and IWI is not in contempt of these provisions of the court's orders.

---

**4.** Nettis' expert testified at the 10 March 1999 hearing that AltaVista is a popular search engine.

### B. Continued Retrieval of IWI's Website in Response to Queries for the Offending Terms

█ The second issue of contempt arises from the fact that, by the middle of January 1999, there were at least six search engines which retrieved IWI's website. At that time, the Preliminary Injunction had been issued for over a month, and the Temporary Restraining Order had been issued for over two months. Also, on 9 March 1999 two more search engines were discovered to retrieve IWI's website. The Temporary Restraining Order and the Preliminary Injunction enjoined IWI from "using in any manner the names 'Nettis Environmental Ltd.,' 'Nettis Environmental' and 'Nettis' or any derivative of the name 'Nettis' on Defendant's Website, in buried code or metatags on its home page or Web pages, *or in connection with the advertising or promotion of its goods, services or websites*" (emphasis added). Also, both orders required IWI to "immediately cease using the names 'Nettis Environmental Ltd.,' 'Nettis' and 'Nettis Environmental' on the Internet."

IWI first argues that, construing these orders in its favor, it fully complied with their terms on 10 November 1998. *See* IWI's Brief In Opposition, at 8–9. However, even viewing any ambiguities in favor of IWI, IWI did not fully comply with the orders merely by cleansing its website of the offending terms on 10 November 1998.

By registering its website with 380 search engines,[5] IWI had been promoting its goods and services since 21 October 1998. By not canceling these registrations after the court orders had issued, IWI continued to promote its goods and services by using Nettis' name. As the evidence has shown, this advertising and promotion persisted on some search engines through January 1999. Two more search engines were discovered linking IWI's website with the Nettis name on 9 March 1999. In addition, the continued registration is a "use" of the Nettis name on the internet, also forbidden by the previous court orders.

Admittedly compliance can be a daunting task. Nettis' own expert stated that, if all the things he would have done under similar circumstances had been done by IWI, immediate success might not be guaranteed. Given the recent explosion of internet users, and the concomitant rise in search engines and websites, finding every instance of a connection between IWI's website and the Nettis name on the internet can be difficult and burdensome. Moreover, once found, IWI has no direct control over what the search engine administrators place, or do not place, on the search engines they run. This fact alone does not exonerate IWI from contempt liability, for it is undisputed IWI caused all connections by placing hidden text on its website and registering its website 380 times as being associated with the Nettis name. At the time IWI agreed to the Temporary Restraining Order and Preliminary Injunction, it, and it alone, knew of its registrations with 380 search engines.

The question is whether IWI's actions in response to the court orders constitute "reasonable steps" to comply with the court orders. IWI took no affirmative action to "undo" its October 1998 registrations with 380 search engines or websites until late January 1999. Instead, IWI relied on the advice of its computer consultant. The consultant erroneously assumed the search engines would themselves update their information within a few days. A reasonable person under court orders would, however, at least check to make certain compliance had occurred. IWI did not.

█ Although reliance on counsel, or a computer consultant as in this case, may

---

5. On 21 October 1998, less than one month before the date on which IWI asserts it fully complied, IWI had affirmatively registered its website with 380 search engines or websites.

IWI included the following terms as keywords associated with its website: "Nettis NETTIS ENVIRONMENTAL DR Nettis NETTIS nettis environmental nettis."

indicate the alleged contemnor acted in good faith and did not willfully violate a court order, civil contempt is not thereby avoided. *See TWM Mfg. Co. v. Dura Corp.*, 722 F.2d 1261, 1273 (6th Cir.1983) (quoting *Proudfit Loose Leaf Co. v. Kalamazoo Loose Leaf Binder Co.*, 230 F. 120, 132 (6th Cir.1915)) ("advice of counsel and good faith conduct do not relieve from liability for a civil contempt, although they may affect the extent of the penalty").

Not only would a reasonable person check whether the search engines had automatically been updated, but also would have taken affirmative action to "undo" the registrations. Although IWI does not control the search engines and websites with which it registered, it did not even use the same means it employed to register its website—an electronic mail message—to cancel the registrations until late January 1999. IWI did not take all reasonable steps in this regard.

IWI violated the terms of the Temporary Restraining Order and the Preliminary Injunction, and is in civil contempt of orders of this Court.

### III. Sanctions

■ "Broadly, the purpose of civil contempt is to coerce an individual to perform an act or to compensate an injured complainant." *United States v. Bayshore Assocs., Inc.*, 934 F.2d 1391, 1400 (6th Cir. 1991). Incarceration of an individual is a valid sanction for civil contempt if it is conditional, so that once the person complies with the court order the person will be released. *See id.* It is said such a contemnor carries the jail keys in his or her pocket. A fine is an appropriate sanction, so long as it is either (1) payable to a person harmed by the contempt, based upon evidence of actual loss, or (2) payable

to the court if the contemnor does not comply with the court order. *See id.* at 1400–01. In fashioning contempt sanctions, "a court is obliged to use the 'least possible power adequate to the end proposed.'" *Spallone v. United States*, 493 U.S. 265, 276, 110 S.Ct. 625, 107 L.Ed.2d 644 (1990), quoting *Anderson v. Dunn*, 19 U.S. (6 Wheat.) 204, 5 L.Ed. 242 (1821).

■ Nettis requests three sanctions be imposed on IWI: a coercive sanction in the nature of incarceration of IWI principals or a daily fine until IWI comes into compliance; a compensatory fine and attorney fees; and the appointment of a computer expert by the Court at IWI's expense to oversee whether IWI is and continues to be in compliance with the court orders. Nettis also argues IWI should make some sort of personal contact with the administrators of each of the 380 search engines, either by telephone or written letter.

Given the nature of the internet technology involved in this case and Nettis' own expert's admission that, under the circumstances in this case, immediate success might not be guaranteed, incarceration and daily fines are inappropriate.

■ To be entitled to a compensatory fine, Nettis must introduce evidence showing actual loss. *See Bayshore Assocs.*, 934 F.2d at 1400. Nettis presented no such evidence, either in the form of IWI's profits generated from its website or in the form of profit lost by Nettis due to IWI's website. Thus, neither a compensatory fine nor an accounting will be ordered.

An award of attorney fees and costs is appropriate in this case for those fees and costs incurred in seeking contempt sanctions.[6] Within 14 calendar days of the

---

**6.** Regarding attorney fees, in its Brief In Opposition filed 8 February 1999, IWI apparently agreed that if it is held in contempt of court, fees and expenses caused by IWI's violation of court order may be awarded: "Finally, Nettis' request for attorneys' fees relating to its pursuit of the motion for a temporary restraining order is inappropri-

ate. If the Court finds IWI in contempt, only fees and expenses incurred by Nettis caused by IWI's violation of the Agreed Judgment Entry can be awarded." *See* IWI, Inc.'s Brief in Opposition, at 12. However, IWI argued an award of fees and expenses related to obtaining the court orders which were violated is inappropriate. *See id.* La-

date this Order is filed Nettis shall file and serve a Memorandum and affidavits in support itemizing such attorney fees and costs. IWI may file and serve a Memorandum in Opposition within 14 calendar days from the date Nettis' Memorandum is served on IWI. Nettis may file and serve a Reply Memorandum within 7 calendar days from the date it is served with a Memorandum in Opposition.

Nettis requests that the Court appoint a computer expert at IWI's expense to monitor IWI's future compliance. Technical expertise is not required to determine whether internet search engines still retrieve IWI's website in response to queries for the Nettis name. Search engines are designed to be accessible to the general public—their function is to help internet users find websites related to a particular topic, regardless of the user's expertise. For this reason, appointment of an expert is an overly expensive means to monitor the search engines.

However, IWI shall determine whether any of the search engines or websites listed in the 21 October 1998 registration list as either a "successful registration" or a "not registered yet" site, still associate IWI's website with the Nettis name. On or before 17 May 1999, IWI shall file with the Court and serve on Nettis an affidavit from the person or persons performing the investigation, stating the compliance results.

Furthermore, IWI shall keep its website inaccessible during the pendency of this lawsuit or until further order of court. Requiring IWI to keep its website inaccessible draws an appropriate balance between the parties' competing interests during the pendency of this lawsuit and helps ensure future compliance. IWI is free to set up another website at a different URL from "http://www.iwiinc.com" to promote its goods and services, so long as IWI does

so in a way which conforms to the Preliminary Injunction in this case.

IT IS SO ORDERED.

---

ter, in another memorandum filed 8 March 1999, IWI objects to any award of attorney fees, arguing Nettis caused its own damage

by failing to contact IWI before asking for contempt of court. *See* Defendant IWI, Inc.'s Legal Memorandum, at 6.