MARTIN, Circuit Judge,
dissenting:
I cannot agree that the circumstances of this case justify the majority’s issuance of a writ of mandamus, which has the extraordinary effect of compelling a United States District Judge to receive a witness other than the one he believed necessary to address compliance with Orders he issued in this prolonged litigation. To be sure, I agree with the majority that “the compelled appearance of a high-ranking officer of the executive branch in a judicial proceeding implicates the separation of powers,” and I thus agree that such an order is appropriate in very limited cir *1378 cumstances. However, given the EPA’s continued failure to comply with the district court’s mandates, such circumstances are present in this case. As a result, I find no abuse of discretion by the district court, and would deny mandamus relief.
In deciding the important question before us, the majority would confíne our review of the record to the four corners of Judge Gold’s Order of September 21, 2010, in which he denied the EPA’s request to substitute an Assistant Administrator as a witness, when he had ordered the appearance of the Administrator. This Order, says the majority, does not contain a sufficient explanation for why the Assistant Administrator won’t do. To arrive at this conclusion, however, requires turning a blind eye to at least two realities. First, Judge Gold has presided over this case since it was filed on June 17, 2004, and has written extensively about the EPA’s failure to heed his orders. Second, in his September 21 Order, Judge Gold makes repeated reference to the history of this case, previous orders of the court, conversations had with counsel, and generally, the background which led him to require the presence of the EPA Administrator in the first place. Thus his look back over the history of this case is very much a part of his explanation for requiring the presence of the Administrator.
In its Order of April 14, 2010, the district court set out in extensive detail that the EPA has unequivocally and repeatedly flouted and otherwise refused to comply with the court’s previously entered Summary Judgment order. As the April Order explained, on July 29, 2008, the district court issued a 101-page Order holding the EPA in violation of the Clean Water Act and prescribing directives to remedy those violations. Yet extraordinarily, over one year later the EPA had still not acted, and ultimately did not act until November 4, 2009, after the plaintiffs filed a motion for contempt. Furthermore, as the district court took great pains to explain, the substance of the EPA’s 2009 Determination flatly contravened the 2008 Summary Judgment Order. In the face of this inaction, the court warned that nothing short of the “effective!] repeal of fa] clearly expressed Congressional mandate” was at stake.
Determined to enforce its mandate but confronted by what it viewed as remarkable disobedience, the district court thus “facefd] the difficult task of avoiding both remedies that may be too intrusive ... and those that may prove to be ineffective.” NAACP v. Sec’y Hous. & Urban Dev., 817 F.2d 149, 159 (1st Cir.1987). After careful deliberation, the court concluded that to remedy the EPA’s disregard of the Summary Judgment order, it was necessary for the Administrator of the EPA to appear and update the court on the Agency’s progress towards compliance. The court then set the date of this appearance to be six months after the order issued.
In September, five months after issuance of the April 14 Order, and only one month before the Administrator was to appear, the EPA moved to substitute an alternative representative in the place of the Administrator. The district court denied this motion, explaining:
[T]his case ... presents extraordinary circumstances and a special requirement for the Administrator’s attendance. A review of the lengthy record in this case reveals the significant need for Defendants to present the Administrator, Regional Administrator, and FDEP Secretary at a hearing to ensure the Defendants are complying with the previously issued orders. As demonstrated by the record, Defendants have not complied with the orders, and therefore, it is necessary for the Administrator, Regional Administrator, and FDEP *1379 Secretary to personally appear and report to the Court on their compliance efforts, as outlined by the April 14, 2010 Order.
The court further explained, “[a]s outlined by lengthy opinions in the record, this case has a long history of extraordinary circumstances demonstrating a very special need for compliance with this Court’s orders.”
The EPA now comes before this Court requesting the extraordinary remedy of mandamus to save them from the consequences of their own extraordinary noncompliance. I would deny that request. Mandamus is “appropriate only when no other adequate means are available to remedy a clear usurpation of power or abuse of discretion by the district court.” Carpenter v. Mohawk Indus., Inc., 541 F.3d 1048, 1055 (11th Cir.2008). Indeed, mandamus “is intended to provide a remedy for a plaintiff only if he has exhausted all other avenues of relief and only if the defendant owes him a clear nondiscretionary duty.” Cash v. Barnhart, 327 F.3d 1252, 1258 (11th Cir.2003). As a result, “[t]he petitioner seeking the writ carries the burden of showing that its ‘right to the issuance of the writ is clear and indisputable.’” Carpenter, 541 F.3d at 1055 (quoting In re Lopez-Lukis, 113 F.3d 1187, 1188 (11th Cir.1997)). Our precedent does not permit me to conclude that the district court judge has failed to perform a nondiseretionary function imposed upon him by law, such that the issuance of a writ of mandamus is justified. Nor do I believe that the Administrator has carried the heavy burden required to justify our mandating how a United States District Judge manages the parties to litigation before him.
Both precedent and prudence support the district court’s actions. The record below is replete with examples of the EPA’s failure to comply with the court’s orders. Faced with such recalcitrance, the court properly relied upon the long recognized inherent authority of district courts to enforce their mandates. See, e.g., Chambers v. NASCO, Inc., 501 U.S. 32, 43, 111 S.Ct. 2123, 2132, 115 L.Ed.2d 27 (1991) (“Courts of justice are universally acknowledged to be vested, by their very creation, with power to impose silence, respect, and decorum, in their presence, and submission to their . lawful mandates.”) (quoting Anderson v. Dunn, 19 U.S. (6 Wheat.) 204, 227, 5 L.Ed. 242 (1821)). Indeed, more than permissible, the district court’s actions were consistent with our prior instructions regarding the duties of the Judiciary. As we have explained, “[fjederal courts have both the inherent power and the constitutional obligation to protect their jurisdiction from conduct which impairs their ability to carry out their Article III functions.” Martin-Trigma v. Shaw, 986 F.2d 1384, 1386-87 (11th Cir.1993) (quoting Procup v. Strickland, 792 F.2d 1069 (11th Cir.1986) (en banc)). Thus, although compelling the Administrator to appear is extraordinary, it is in my view less so than the EPA’s blatant unwillingness to abide by the court’s commands.[1]
Extraordinary or not, however, the district court’s order for the Administrator to appear is supported by binding authority.[2] *1380 First, in United States v. Morgan, 313 U.S. 409, 61 S.Ct. 999, 85 L.Ed. 1429 (1941), a case which undergirds this Court’s decision in In re United States, 985 F.2d 510, 512 (11th Cir.1993),[3] the Secretary of Agriculture was not only subjected to deposition, over the government’s objection, for proceedings in which he was a party, but also “appeared in person at the trial.” Morgan, 313 U.S. at 422, 61 S.Ct. 999. While there, “[h]e was questioned at length regarding the process by which he reached the conclusions of his order, including the manner and extent of his study of the record and his consultations with subordinates.” Id. That the Secretary actually testified undermines— fatally in my estimation — the government’s fears about the ability of the Administrator to both appear as a witness in extraordinary cases and also “fulfill her role as a cabinet officer.”
Second, “it is ... settled that [even] the President is subject to judicial process in appropriate circumstances.” Clinton v. Jones, 520 U.S. 681, 703, 117 S.Ct. 1636, 137 L.Ed.2d 945 (1997) (discussing Chief Justice Marshall’s “ruling that a subpoena duces tecum could be directed to the President” (citing United States v. Burr, 25 F. Cas. 30 (No. 14,692d) (C.C.Va.1807))). As a result, the majority “errs by presuming that interactions between the Judicial Branch and the Executive, even quite burdensome interactions, necessarily rise to the level of constitutionally forbidden impairment of the Executive’s ability to perform its constitutionally mandated functions.” Clinton v. Jones, 520 U.S. at 702, 117 S.Ct. 1636. To the contrary,
As Madison explained [in Federalist 47], separation of powers does not mean that the branches “ought to have no partial agency in, or no controul over the acts of each other.” The fact that a federal court’s exercise of its traditional Article III jurisdiction may significantly burden the time and attention of the Chief Executive is not sufficient to establish a violation of the Constitution.
Id. at 703, 117 S.Ct. 1636 (quotation omitted) (emphasis in original). Surely, if this burden can be exerted upon the Chief Executive, then it necessarily follows that Cabinet level officials can be so burdened as well.
Finally, in light of the extensive disobedience displayed by the EPA, I would hold that this case presents the exigency that In re United States requires in order to compel the testimony of high ranking officials. 985 F.2d at 512. In that case, the Commissioner of the Food and Drug Administration resisted a subpoena to appear as a witness in a prosecution of two criminal defendants who were accused of violating various drug regulations. Id. at 511. *1381 We recognized that the normal means to fight such a subpoena would be for the Commissioner to disregard it and place himself in contempt, but explained that doing so would “implicate!] separation of powers concerns,” distract the Commissioner from his other responsibilities, “harm the public perception of the FDA,” and “prolong the litigation of this tangential issue and delay the trial of the underlying criminal offense.” Id. at 512. As a result, we held “that a writ of mandamus, if warranted, is the appropriate remedy.” Id. (emphasis added).
By the plain text of the opinion, then, we cautioned that mandamus is not appropriate in all instances in which a high level official is called to testify. Instead, we explained that mandamus would be warranted only where “extraordinary circumstances or a special need for the [high level official’s] testimony” could not be identified. Id. We concluded that the facts of that particular case did not present such circumstances, and as a result afforded mandamus relief. Id. at 512-13.
As discussed above — and at length by the district court — such extraordinary circumstances are present here. In any other case, we would impose nothing short of the harshest sanctions against a private party that behaved in a manner analogous to the EPA. Indeed, I would be shocked if the only intermediate consequence to befall a corporation that so brazenly disobeyed a federal court Order was that its CEO was directed to testify about future compliance efforts. But regardless of any other consequences, it is clear that the entity’s most senior managing official is the appropriate individual to speak towards future compliance efforts. As a result, I cannot conclude that the district court abused its discretion in requiring the Administrator to appear. An abuse of discretion warranting mandamus occurs when a court commits “[a] clear error of judgment or application of an incorrect legal standard.” Mohawk Indus., 541 F.3d at 1055. Judge Gold has done neither.
I am well aware that the offending party is a government agency, and so normal remedies must be evaluated in the context of the separation of powers. Yet, to conclude that respect for a co-equal branch means we are powerless to enforce our judgments turns the doctrine of separation of powers on its head. Thus, I find it perplexing that our fidelity to the notion of separation of powers has led the members of this panel to reach different conclusions. To be sure, I agree that “[t]he threat to separation of powers is more substantial here than in In re United States.” But I view the proper remedy to that threat as the district court’s subpoena, which is the appropriate check through which to restore the delicate balance between the Executive and the Judiciary. See The Federalist No. 51, at 286 (Alexander Hamilton) (E.H. Scott ed., 1898) (“[T]he great security against a gradual concentration of the several powers in the same department, consists in giving to those who administer each department the necessary constitutional means, and personal motives, to resist encroachments of the others.”); accord Clinton v. Jones, 520 U.S. at 699 n. 30,117 S.Ct. 1636 (quoting same).[4] Because instead the majority elects to exacerbate that threat while at the same time weaken *1382 ing the extraordinary nature of mandamus, I respectfully dissent.

. Although the underlying merits of the Summary Judgment Order may eventually be addressed on appeal, at this stage we must take the findings of the district court as we receive them. See Jaffree v. Wallace, 837 F.2d 1461, 1467 (11th Cir.1988) (" ‘The established rule in the federal courts is that a final judgment retains all of its res judicata consequences pending decision of the appeal.' ” (quoting 18 C. Wright, A. Miller, & E. Cooper, Federal Practice and Procedure sec. 4433, at 308 (1981 & Supp.1987))).

. As the majority implies, we are bound only by Supreme Court precedent and the holdings of this Court. Thus, while I agree that we ought to respect our sister circuit’s precedent as persuasive, that authority does not control. *1380 in any event, because no circuit has analyzed a district court's powers to compel witnesses in the context of recalcitrance at the level of the EPA’s in this case, the majority’s out-of-circuit precedent is distinguishable on its facts.

. In In re United States we cited Morgan for the proposition that "the practice of calling high officials should be discouraged.” 985 F.2d at 512. However, this description expands upon what that case actually stands for. In fact, rather than discouraging the practice of soliciting testimony from high level officials generally, the Court in Morgan actually critiqued subjecting the Secretary to testifying because of his role in that case. As the Court explained, the underlying litigation concerned a "proceeding before the Secretary [that] 'has a quality resembling that of a judicial proceeding.' " 313 U.S. at 422, 61 S.Ct. 999 (quotation omitted). This being so, the Court reasoned that "[j]ust as a judge cannot be subjected to such scrutiny ... so the integrity of the administrative process must be equally respected.” Id. (citation omitted). Thus, Morgan actually discourages soliciting testimony from high level officials when they serve in a judicial capacity.

. I read Federalist No. 78 to also support denying mandamus relief in this case. In describing the “least dangerous” branch, Federalist No. 78 emphasizes the inherent weaknesses of the Judiciary. See The Federalist No. 78, at 425-26 (Alexander Hamilton) (E.H. Scott ed., 1898). Rather than praise these weaknesses, however, the text states that “all possible care is requisite to enable it to defend itself against ... attacks” from the other branches. Id. at 425. In my view, therefore, Federalist No. 78 cuts squarely against reversing the district court.